RECORD NUMBER: 13-7695

# United States Court of Appeals

*for the*

# Fourth Circuit

**SUZANNE BOREN, Guardian of the Person
and Conservator of the Estate of Rockie Harold Watts,**

*Appellee,*

– v. –

**NORTHWESTERN REGIONAL JAIL AUTHORITY,**

*Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT HARRISONBURG**

# OPENING BRIEF OF APPELLANT

**ROSALIE P. FESSIER**
**TIMBERLAKE, SMITH, THOMAS &
  MOSES, P.C.**
**25 North Central Avenue**
**Staunton, Virginia 24402**
**T: (540) 885-1517**

*Counsel for Northwestern Regional
Jail Authority*

CP  COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
          (appellant/appellee/amicus)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO


2.     Does party/amicus have any parent corporations?                               YES     NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            YES     NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?       YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____            _____
        (signature)                                    (date)

# TABLE OF CONTENTS

Corporate Disclosure Statement

Table of Authorities ...................................................................................... iii

Statement of Subject Matter and Appellate Jurisdiction .......................... 1

Statement of the Issues Presented for Review ......................................... 2

Statement of the Case ................................................................................. 3

     Statement of Facts........................................................................ 4

Summary of Argument................................................................................. 5

Argument...................................................................................................... 6

     Standard of Review...................................................................... 6

  I.    NRJA, as a regional jail authority, is a "municipal corporation" for purposes of determining sovereign immunity ........................................................................ 7

      A.   Under the first factor in determining if an entity is a municipal corporation for sovereign immunity purposes, proper consideration of a regional jail authority's municipal attributes supports a finding that it is municipal corporation ................................................. 11

      B.   Under the second factor for determining if an entity is a municipal corporation, proper consideration of the particular purpose for determining whether a municipal corporation is present directs a finding that NRJA is a municipal corporation............................................ 17

  II.   NRJA's operation of a jail and the provision of medical care to detainees involves the exercise of a governmental function........................................................................................ 20

i

III.    In the alternative, even if NRJA is not a "municipal corporation," it nevertheless is entitled to sovereign immunity because of the Commonwealth's significant interest in the operation of regional jails and provision of medical care to its inmates and detainees, and the level of control exercised by the Commonwealth over regional jail authorities, notwithstanding local activation and on-site management by NRJA's board ........................................................... 20

Conclusion ........................................................................................... 25

Request for Oral Argument .................................................................... 25

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases:**

Afzall v. Commonwealth,
    273 Va. 226, 639 S.E.2d 279 (2007) .......................................................... 1, 8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................ 7

Carter v. Chesterfield County Health Comm'n,
    259 Va. 588, 527 S.E.2d 783 (2000) ............................................................ 8

City of Virginia Beach v. Carmichael Dev. Co.,
    259 Va. 493, 527 S.E.2d 778 (2000) .......................................................... 21

Columbia v. Haley,
    738 F.3d 107 (4th Cir. 2013) ..................................................................... 7

County of York v. Peninsula Airport Com.,
    235 Va. 477, 369 S.E.2d 665 (1988) ................................................... *passim*

Estelle v. Gamble,
    429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ............................ 19, 22

Franklin v. Town of Richlands,
    161 Va. 156 (1933) ................................................................................ 18, 20

Gray-Hopkins v. Prince George's County,
    309 F.3d 224 (4th Cir. 2002) ..................................................................... 1

Hampton Roads Sanitation Dist. v. Smith,
    193 Va. 371, 68 S.E.2d 497 (1952) ....................................................... 8, 9, 11

Hauth v. Southeastern Tidewater Opportunity Project, Inc.,
    420 F. Supp. 171 (1976) ........................................................................... 16

Heckenlaible v. Va. Peninsula Reg'l Jail Auth.,
    491 F. Supp. 2d 544 (E.D.Va. 2007) ................................................... 11, 12

iii

Holsapple v. Morris, et al,
    Case No. CL08000326 (Culpeper Co. December 16, 2008) ....................... 18

Jean Moreau & Assocs. v. Health Ctr. Comm'n,
    283 Va. 128, 720 S.E.2d 105 (2012) ...................................................... 7, 10

Kensington Volunteer Fire Dep't, Inc. v. Montgomery County,
    684 F.3d 462 (4th Cir. 2012) ........................................................... 6

Messina v. Burden,
    228 Va. 301, 321 S.E.2d 657 (1984) ............................................ 7

Research Triangle Inst. v. Board of Governors of the Fed. Reserve Sys.,
    132 F.3d 985 (4th Cir. 1997) ....................................................... 21

Richmond v. Richmond Metropolitan Authority,
    210 Va. 645, 172 S.E.2d 831 (1970) .......................................... 9

Sanders v. Hildebrand, et al,
    Case No. CL06-755 (Frederick Co, March 21, 2007) .................................. 18

Seabolt v. County of Albemarle,
    283 Va. 717, 724 S.E.2d 715(2012) ............................................... 1, 7

Tully v. Hildebrand et al.,
    Civil Action No. 06 -489 (Frederick Co. December 22, 2006) .................... 18

Virginia Elec. and Power Co. v. Hampton Redevelopment and
Housing Authority,
    217 Va. 30, 225 S.E.2d 364 (1976) ...................................................... *passim*

## Rules, Statutes and Other Authorities:

U.S. Const. 8th Amendment ............................................................. 19, 22

U.S. Const. 14th Amendment ........................................................... 19, 22

28 U.S.C. § 1291 ............................................................................. 1

Va. Code Ann. § 2.2-1839 ............................................................ 24

Va. Code § 53.1-32 ........................................................... 19, 22

Va. Code Ann. § 53.1-68 ................................................... 23

Va. Code Ann. § 53.1-69 ................................................... 24

Va. Code Ann. § 53.1-95.2 ................................................. 4

Va. Code Ann. § 53.1-95.3 ................................................. 13

Va. Code Ann. § 53.1-95.6 ................................................. 17

Va. Code Ann. § 53.1-95.7 ........................................... *passim*

Va. Code Ann. § 53.1-95.9 ................................................. 15

Va. Code Ann. § 53.1-95.10 ............................................... 17

Va. Code Ann. § 53.1-95.15 ........................................ 13, 20, 22

Va. Code Ann. § 53.1-95.19 ............................................... 23

Va. Code Ann. § 53.1-95.20 ............................................... 23

Va. Code Ann. § 53.1-95.22 ........................................... 14, 19

Va. Code § 53.1-126 ....................................................... 19, 22

Va. Code § 53.1-133.01 ................................................... 19, 22

6 Va. Adm. Code § 15-20-30 ............................................. 23

6 Va. Adm. Code § 15-20-140 ........................................... 24

6 Va. Adm. Code 15-40-10 ............................................... 23

6 Va. Adm. Code § 15-40-380 ........................................... 19, 22

6 Va. Adm. Code § 15-40-440 ........................................... 19, 22

6 Va. Adm. Code § 15-40-320 through § 15-40-530 ............... 24

6 Va. Adm. Code § 20-50-10 through § 20-50-110 ............................................... 23

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................. 6, 7

The Federalist No. 81 (Alexander Hamilton) (B. F. Wright ed. 1961) .................. 21

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Northwestern Regional Jail Authority ("NRJA") appeals a decision by the District Court entered on September 30, 2013,(App. 251)denying NRJA's motion to dismiss all claims of negligence contained in Counts I and II of the Complaint on the basis of state law sovereign immunity.  NRJA timely filed a notice of appeal on October 17, 2013. (App. 252).

This Court has jurisdiction to review final orders of district courts under 28 U.S.C. § 1291. Gray-Hopkins v. Prince George's County, 309 F.3d 224, 229 (4th Cir. 2002).  "Under the collateral order doctrine, an order is final for purposes of § 1291, even if it does not terminate proceedings in the district court, so long as it conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and would be effectively unreviewable on appeal from a final judgment." Id. (citations omitted).

The sovereign immunity claimed by NRJA is an immunity from suit and is jurisdictional. Seabolt v. County of Albemarle, 283 Va. 717, 719, 724 S.E.2d 715(2012);  Afzall v. Commonwealth, 273 Va. 226, 231, 639 S.E.2d 279 (2007). The District Court's order denying NRJA sovereign immunity is effectively unreviewable on appeal from a final judgment and is appealable as a final order under the collateral order doctrine. See Gray-Hopkins,309 F.3d at 229.

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.     Whether a regional jail authority is a "municipal corporation" for purposes of determining sovereign immunity where it has been designated as an instrumentality and effectively is a "political subdivision" for sovereign immunity purposes; it is created to serve a public purpose; has the power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenue, personal and real property; has the power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; its management is vested in a board of directors or a commission; has essentially an *indirect* power of eminent as a regional jail authority may acquire land for public use which may have been previously acquired through eminent domain for jail purposes by another public body; all of its organic members are entitled to sovereign immunity for performance of the same function; and the allegations asserted are directly related to the important public purpose served by regional jail authorities for which sovereign immunity is sought.

II.    Whether a regional jail authority's operation of a jail and the provision of medical care to detainees involves the exercise of a governmental function which is cloaked with sovereign immunity.

2

III.    Whether, in the alternative, even if a regional jail authority is not a "municipal corporation," it nevertheless is entitled to sovereign immunity because of the Commonwealth's significant interest in the operation of regional jails and provision of medical care to its inmates and detainees, and the level of control exercised by the Commonwealth over regional jail authorities, notwithstanding local activation and on-site management by their boards.

## STATEMENT OF THE CASE

Suzanne Boren, guardian and conservator of the Estate of Rockie Watts, filed a complaint against NRJA and others arising out the provision of medical care to Rockie Watts while he was a detainee at the Northwestern Regional Adult Detention Center. (App. 16-42). Boren asserted against NRJA claims of negligence, gross negligence and wilful and wanton conduct contained in Counts I and II. (App. 27-32). Boren also asserted a claim of violations of the Virginia Constitution (Count IV) against NRJA. (App. 34-36). No federal claims were asserted against NRJA. NRJA filed a motion to dismiss the claims against it, in part, on the grounds that state law sovereign immunity barred the negligence claims asserted in Counts I and II. (App. 59-61). After full briefing by the parties and oral argument, the District Court granted NRJA's motion to dismiss the claim arising under the Virginia Constitution (Count IV) but denied its motion to dismiss Counts I and II on sovereign immunity grounds.

3

(App. 251). NRJA timely filed a notice of appeal pursuant to the collateral order doctrine. (App. 252). On November 15, 2013, the District Court entered a stay of proceedings pending this appeal. (Doc. 138).

**Statement of Facts**

Boren claims that Mr. Watts received inadequate medical care on May 5, 2011, while he was a detainee at the Northwestern Regional Adult Detention Center ("NRADC") which is operated by NRJA. (App. 19). NRJA is a jail authority created in accordance with statute. Va. Code Ann. §53.1-95.2. Its member localities include Clarke County, Fauquier County, Frederick County and the City of Winchester. (App. 7).

Specifically, Boren alleges that while confined at the jail, Rockie Watts suffered multiple seizures for which he was not provided adequate medical care, including a timely transportation of Mr. Watts to the emergency room. (App. 21-25). Boren alleges that as a result of the inadequate medical care provided during his confinement at the jail, Mr. Watts coded at the hospital and was revived after he suffered from hypoxic encephelopathy due to the lack of oxygen to his brain, the effects from which continue to this day. (App. 25).

## SUMMARY OF ARGUMENT

NRJA, a regional jail authority, is a "municipal corporation" for purposes of determining sovereign immunity. Under the first factor for determining if an entity is a municipal corporation for sovereign immunity purposes, proper consideration of a regional jail authority's municipal attributes supports a finding that it is municipal corporation in this case.  The presence of all six municipal attributes is not required under Virginia law. The lack of express language designating it as "political subdivision" does not preclude a finding that it is a municipal corporation where it is clear that the General Assembly intended it to be. The lack of the direct power of eminent domain does not preclude a finding that it is a municipal corporation as the direct power of eminent domain is not necessary where a regional jail authority can acquire public lands acquired by eminent domain of the Commonwealth and the jail authority's participating member localities.

Under the second factor for determining if an entity is a municipal corporation, the Court must consider the particular purpose for determining whether a municipal corporation is present. In this case that purpose is sovereign immunity. Where all of NRJA's organic members are entitled to sovereign immunity for performance of the same function, it does not stand to reason that sovereign immunity would be lost for the performance of the exact same governmental functional simply because immune

agencies joined forces to undertake the cost sharing measure of forming a regional jail authority. Additionally, the allegations asserted in the lawsuit are directly related to the important public purpose, which is the operation of a jail and provision of medical care to inmates, served by regional jail authorities for which sovereign immunity is sought.

Municipal corporations are entitled to sovereign immunity for the exercise of governmental functions, not proprietary ones. NRJA's operation of a jail and the provision of medical care to detainees in this case involves the exercise of a governmental function which is cloaked with sovereign immunity.

In the alternative, even if NRJA is not a "municipal corporation," it nevertheless is entitled to sovereign immunity because of the Commonwealth's significant interest in the operation of regional jails and provision of medical care to its inmates and detainees, and the level of control exercised by the Commonwealth over regional jail authorities, notwithstanding local activation and on-site management by their boards.

## ARGUMENT

### *Standard of Review*

A District Court's denial of a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6) is reviewed *de novo*. Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012). To survive a motion to dismiss, the

complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although a motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, dismissal is appropriate when the face of the complaint clearly reveals the existence of a meritorious defense, including an immunity defense. <u>See Columbia v. Haley</u>, 738 F.3d 107, 116 (4th Cir. 2013)(citations and quotations omitted).

I.    **NRJA, as a regional jail authority, is a "municipal corporation" for purposes of determining sovereign immunity.**

The doctrine of sovereign immunity is alive and well in the Commonwealth of Virginia. <u>Jean Moreau & Assocs. v. Health Ctr. Comm'n</u>, 283 Va. 128, 137, 720 S.E.2d 105 (2012); <u>Messina v. Burden</u>, 228 Va. 301, 307, 321 S.E.2d 657 (1984). State law sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation. <u>Messina</u>, 228 Va. at 308. Sovereign immunity is jurisdictional and should be determined as a threshold matter. <u>Seabolt</u>, 283 Va. at

7

719.  If sovereign immunity applies, the court is without subject matter jurisdiction to adjudicate the claim. Afzall, 273 Va. at 230.

Because the Commonwealth has sovereign immunity, no action for tort may be maintained against the Commonwealth unless it consents.  Virginia Elec. and Power Co.("VEPCO") v. Hampton Redevelopment and Housing Authority, 217 Va. 30, 32, 225 S.E.2d 364 (1976)(citations omitted).  The Commonwealth can create a separate entity as an agency of the Commonwealth to perform a function of the state government and such entity will be clothed with the Commonwealth's immunity.  Id.  Virginia also acknowledges that municipal corporations who require local activation may be entitled to sovereign immunity from tort liability in certain circumstances.  Carter v. Chesterfield County Health Comm'n, 259 Va. 588, 590, 527 S.E.2d 783 (2000); VEPCO, 217 Va. at 33; Hampton Roads Sanitation Dist. v. Smith, 193 Va. 371, 377, 68 S.E.2d 497 (1952). The fact that local activation is required does NOT preclude a finding that the entity is a municipal corporation. County of York v. Peninsula Airport Com., 235 Va. 477,fn.1, 369 S.E.2d 665 (1988).

Virginia recognizes that there is a wide continuum or spectrum of public entities and each much must be analyzed within the specific facts of each case to determine if they are a "municipal corporation." Hampton Roads Sanitation Dist., 193 Va. at 374, 377.  "Some of these entities are almost perfect in their organization . . . others

8

are hardly worthy of the designation 'corporation.'" Id.193 Va. at 374. "Between these two clearly-differentiated extremes there are a large number of governmental agencies variously described as 'political', 'public,' 'civil,' or otherwise." Id. Virginia acknowledges that while these public entities are not "municipal corporations" in the strict sense of the term, they nevertheless are created to perform an essentially public service. Id. 193 Va. at 375.

In determining whether a local governmental entity is a "municipal corporation" for tort claims against it, two basic factors must be considered: what attributes of a municipality the entity possesses, and the particular purpose for determining whether a municipal corporation is present. VEPCO., 217 Va. at 33. Six municipal attributes have been identified in analyzing the first factor: (1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth; (2) Creation to serve a public purpose; (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenue, personal and real property; (4) Possession of the power of eminent domain; (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; and (6) Management of the corporation vested in a board of directors or a commission. Richmond v. Richmond Metropolitan Authority, 210 Va. 645, 647, 172 S.E.2d 831

9

(1970). Virginia has never declared that all six attributes must be present in order for an entity to be considered a municipal corporation.

In determining the second factor, the Court should consider the particular purpose for determining whether a municipal corporation is present, which in this case is sovereign immunity. Virginia has declared that for purposes of uniformity in determining tort immunity, an entity should be held to occupy the same status as the municipality which brings it into existence and oversees its activities. VEPCO, 217 Va. at 34.[1]

---

[1]In Jean Moreau & Assocs, 283 Va. at 140-42, the Virginia Supreme Court clarified its holding in VEPCO by rejecting an Attorney General opinion that had previously interpreted this holding to create a new and separate test for determining the level of immunity of a municipal corporation by looking at whether activation was by a county (which enjoys absolute immunity) or was by a municipality (which enjoys immunity for its governmental functions but not its proprietary functions). The Virginia Supreme Court stated that it did not intend for its holding in VEPCO to mean that a municipal corporation should have a different level of immunity because it was activated by a county from a municipal corporation that was activated by a municipality. Id. 283 Va. at 141. That clarification in Jean Moreau & Assocs. has no bearing here, as the issue here is not whether NRJA enjoys absolute immunity because its local activation included one or more counties, rather the issue is whether it is a municipal corporation entitled to immunity for its governmental functions. The Court in Jean Moreau & Assocs, did not retract VEPCO's directive that when sovereign immunity is the particular purpose for determining whether a municipal corporation is present (the second factor) then it is important to look at the immunity of the entities creating the entity in question. Id.

10

**A.    Under the first factor in determining if an entity is a municipal corporation for sovereign immunity purposes, proper consideration of a regional jail authority's municipal attributes supports a finding that it is municipal corporation.**

The Virginia Supreme Court has never stated that an entity must have ALL possible attributes of a municipality before an entity will be found to be a municipal corporation.  The final decision rests, not on the quantitative number of municipal attributes an entity has, but on the specific issue of each case.  <u>Hampton Roads Sanitation District Commission v. Smith</u>, 193 Va. at 377.  The question is if the entity possesses *enough* of the essential attributes. <u>County of York v. Peninsula Airport Com</u>., 235 Va. at 481,fn.1(emphasis added).

The District Court found absent two municipal attributes:  express language in the enabling statute declaring regional jail authorities to be "political subdivisions;" and the power of eminent domain.  Instead of determining whether regional jail authorities possess "enough" of the essential attributes of municipal corporations on the wide continuum or spectrum of local governmental entities, and instead of considering the immunity enjoyed by NRJA's participating localities or the important public purpose served by NRJA, the District Court insisted that all six municipal attributes must be present for a finding that NRJA is a municipal corporation entitled to sovereign immunity.  The District Court, relying upon <u>Heckenlaible v. Va.</u>

11

Peninsula Reg'l Jail Auth., 491 F. Supp. 2d 544 (E.D.Va. 2007), found that since NRJA is missing two out of the six municipal attributes, then NRJA is not a municipal corporation and is not entitled to sovereign immunity. The District Court erred in its narrow and formulaic application of Virginia's standard for determining whether a locally activated entity is entitled to sovereign immunity.

The first "missing" attribute highlighted by the District Court is the absence of express language in the enabling statutes designating regional jail authorities as "political subdivisions." NRJA is designated as an "an instrumentality exercising public and essential governmental functions to provide for the public safety and welfare," but is not specifically identified as a "political subdivision." Va. Code Ann. §53.1-95.7. The District Court's holding conflates form over substance and is not consistent with Virginia law. Virginia does not require the express words "political subdivision" for the entity to be considered a municipal corporation. York, 235 Va. at 481 fn. 1(finding that the airport commission was a political subdivision notwithstanding lack of exact words in the enabling statute). In York, the Virginia Supreme Court found that the Peninsula Airport Commission was a municipal corporation where the Virginia General Assembly identified it as an "independent body corporate" and implied that it was political subdivision with language elsewhere describing "any political subdivision thereof other than the commission,"

notwithstanding the absence of express language designating it as a "political subdivision." Id. 235 Va. at 481.  The Court found that the legislature intended for the airport commission to occupy the status of a political subdivision for purposes of determining whether it was a municipal corporation.  Such an entity, although not an arm of the Commonwealth, will still be a municipal corporation if it possessed *enough* of the essential attributes.  Id. 235 Va. at 481 fn. 1 (emphasis added), citing, VEPCO, 217 Va. at 32-34.

Here, the General Assembly designated regional jails as "instrumentalities." The General Assembly had already employed a much narrower definition of the term "political subdivision" in the regional jail provisions than that used elsewhere in the Virginia Code or defined by the courts.  In the regional jail provisions, a "political subdivision" is defined as: "a county, city, or town of the Commonwealth of Virginia." Va. Code  Ann. §53.1-95.3.  The term political subdivision is defined in this narrow sense in the regional jail provisions to define who are the participating and creating localities of the regional jails.  However, even within the regional jail authority statutes, the General Assembly used the term "political subdivision" in a much broader way to encompass entities other than counties, cities or towns, when the term is used for other purposes. For example, Va. Code Ann. §53.1-95.15 states that: "the bonds issued under the provisions of this article, . . . shall at all times be free and

13

exempt from taxation by the Commonwealth and by any municipality, county, or *other political subdivision* thereof." If the General Assembly intended to limit the term "political subdivision" for *all* purposes to just include counties, cities and towns, it would not have distinguished municipalities and counties from political subdivisions in this section.

For the same reasons applied in York, it is evident that the General Assembly meant for jail authorities to occupy the status of "political subdivision" in the broader sense, to include a determination that it is a municipal corporation. See York, 235 Va. at 481. The General Assembly's designation of regional jail authorities as "instrumentalities," and the General Assembly's directive that the provisions governing regional jails: "being necessary for the welfare of the Commonwealth and its inhabitants, shall be liberally construed to effect the purposes thereof"(Va. Code Ann. § 53.1-95.22) direct a finding that regional jail authorities occupy the status of "political subdivisions" as that term is used in determining whether an entity is a municipal corporation entitled to sovereign immunity.

The second "missing" attribute, according to the District Court, is the direct power of eminent domain. The provisions respecting the acquisition of land by jail authorities state:

14

An authority created pursuant to this article is hereby authorized and empowered to acquire by gift or by lease or purchase solely from funds provided under the provisions of this article such lands, structures, property, rights, rights-of-way, franchises, easements, and other interests in lands as it may deem necessary or convenient for the construction and operation of the project upon such terms and at such prices as may be considered by it to be reasonable and can be agreed upon between it and the owner thereof.

All public agencies and the commissions of the Commonwealth, with the approval of the Governor, are hereby authorized and empowered to lease, lend, grant, or convey to an authority created pursuant to this article at its request, upon such terms and conditions as may be mutually agreed upon, without the necessity for any advertisement, order of court, or other action or formality, any real property which may be necessary or convenient to the effectuation of the authorized purposes of the authority, including real property already devoted to public use.

Title to any property acquired by an authority created pursuant to this article shall be taken in the name of the authority.

Va. Code Ann. §53.1-95.9

Regional jail authorities are also authorized, "to accept loans and grants of money or materials or property of any kind from the Commonwealth of Virginia or any agency or instrumentality or political subdivision thereof, upon such terms and conditions as the Commonwealth of Virginia or such agency or instrumentality or political subdivision may impose." Va. Code Ann. §53.1-95.7.

Jail authorities do not have the direct power of eminent domain because eminent domain is not necessary to effectuate their important public purpose. They

15

have the authority to receive property, of any kind, from either the Commonwealth or the member localities, *including public lands*. In a broader sense, the direct power of eminent domain may be important as an attribute in order to distinguish entities that are more private in their make-up than public. See Hauth v. Southeastern Tidewater Opportunity Project, Inc., 420 F. Supp. 171 (1976) (finding that a community action agency, who did not have the power of eminent domain, was not a municipal corporation as it was but an independent contractor with its respective cities). Here, we do not have the same concerns. Jail authorities are clearly public in nature with a purely public purpose and funded exclusively by public funds. While the power of eminent domain is a municipal attribute, its absence, in this context does not preclude a finding that the jail authority is a municipal corporation, particularly in light of the authority granted to regional jail authorities to enjoy public lands conveyed by the Commonwealth or other public bodies.

When taken as a whole, regional jail authorites, like NRJA, have *enough* municipal attributes to establish them as a municipal corporation for sovereign immunity purposes under the first factor of the analysis. Regional jails are instrumentalities and effectively are "political subdivisions," for sovereign immunity purposes. Va Code Ann. § 53.1-95.7. Regional jails are created to serve an important public purpose. Va Code Ann. § 53.1-95.7. Regional jails have the power to have a

16

common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose

of its revenue, personal and real property. Va Code Ann. §53.1-95.7.  Regional jails

have the power to borrow money and issue bonds which are tax exempt, with interest

on such bonds enjoying the same status under tax laws as the interest on bonds of

other political subdivisions of the state. Va. Code Ann. § 53.1-95.10. Regional jails

are managed by a board. Va. Code Ann. § 53.1-95.6. Regional jail authorities have

essentially an *indirect* power of eminent as they may acquire land for public use which

may have been previously acquired through eminent domain for jail purposes by

another public body.

**B.    Under the second factor for determining if an entity is a municipal corporation, proper consideration of the particular purpose for determining whether a municipal corporation is present directs a finding that NRJA is a municipal corporation.**

The second factor of the analysis requires focus on the purpose for which the

determination of a municipal corporation is present, which in this case is sovereign

immunity.   As the Virginia Supreme Court previously stated, for purposes of

uniformity in determining tort immunity, an entity should be held to occupy the same

status as the municipality which brings it into existence and oversees its activities.

VEPCO, 217 Va. at 34. In this case, all of the member localities of NRJA enjoy

sovereign immunity for the exercise of their governmental functions. Moreover, other

17

public entities in Virginia that operate jails, such as sheriffs, cities or towns, are afforded sovereign immunity. <u>Franklin v. Town of Richlands</u>, 161 Va. 156, 158 (1933)(a municipality is entitled to sovereign immunity for the operation of a jail). Jail authorities are created to perform, in a more efficient and consolidated manner, the same function as immune agencies and are managed and funded by the same immune agencies.  It does not stand to reason that sovereign immunity would be lost for the performance of the exact same governmental functional simply because immune agencies joined forces to undertake the cost sharing measure of forming a regional jail authority.  Consistent with the Virginia Supreme Court's holding in <u>Franklin</u>, regional jail authorities have been afforded the same immunity as the municipality who operated a jail in <u>Franklin</u>; in fact, employees of  jail authorities, ***including the NRJA***, have been granted sovereign immunity by Virginia circuit courts. <u>See</u> <u>Sanders v. Hildebrand</u>, et al,  Case No. CL06-755 (Frederick Co, March 21, 2007)(holding that the superintendent and other employees of the ***NRJA*** were entitled to sovereign immunity)(App. 76); <u>Tully v. Hildebrand et al,</u> Civil Action No. 06 -489 (Frederick Co. December 22, 2006)(holding that the superintendent and other employees of the ***NRJA*** were entitled to sovereign immunity)(App. 77); <u>see also,</u> <u>Holsapple v. Morris, et al</u>, Case No. CL08000326 (Culpeper Co. December 16, 2008)(holding that the head nurse at the Albemarle-Charlottesville Regional Jail was

18

entitled to sovereign immunity)(App. 78-86).

Another concern under the second factor is the importance of the public purpose served by regional jail authorities for which sovereign immunity is sought and the nexus between that important purpose and the allegations in this lawsuit. The particular issue in this case is whether a jail authority is entitled to sovereign immunity arising from its acts or omissions involved in the operation of a jail and the provision of medical care to detainees.  The Commonwealth has a significant interest in the operation of jail authorities which the Virginia General Assembly has stated are: "necessary for the welfare of the Commonwealth and its inhabitants." Va. Code Ann. §53.1-95.22.  Specific to the function in this case which is the provision of medical care to detainees, the Commonwealth has a significant interest in providing such medical care as mandated by both federal and state law. U.S. Const. 8th Amend.; U.S. Const. 14th Amend.;  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Va. Code §53.1-32; §53.1-126, §53.1-133.01, 6 Va. Admin. Code §15-40-380, 6 Va. Adm. Code §15-40-440.  It is this significant interest and important governmental function that the Commonwealth has delegated to regional jail authorities.  It is the performance of that function that is at issue in this case.

These considerations under the second factor of the analysis in combination with proper consideration of the municipal attributes of NRJA, demand a finding that

19

NRJA is a municipal corporation entitled to sovereign immunity.

**II.    NRJA's operation of a jail and the provision of medical care to detainees involves the exercise of a governmental function.**

Municipal corporations are entitled to sovereign immunity for the exercise of governmental functions, but not for proprietary functions.  VEPCO, 217 Va. at 34. Virginia has unequivocally  declared that the operation of a regional jail is a governmental function.  Va. Code Ann. §§53.1-95.7, 15. This governmental function includes the provision of medical care to inmates as mandated by state and federal law.  The Virginia Supreme Court has long held that the operation of a jail by a municipality is the exercise of a governmental function. Franklin v. Town of Richlands, 161 Va. 156, 158 (1933).

As the claims against NRJA concern the operation of the jail and the provision of medical care which have been deemed governmental functions, NRJA is entitled to sovereign immunity for those claims.

**III.    In the alternative, even if NRJA is not a "municipal corporation," it nevertheless is entitled to sovereign immunity because of the Commonwealth's significant interest in the operation of regional jails and provision of medical care to its inmates and detainees, and the level of control exercised by the Commonwealth over regional jail authorities, notwithstanding local activation and on-site management by NRJA's board.**

Alternatively, even if this Court were to determine that NRJA is not a

"municipal corporation" in the strict sense, NRJA nevertheless should be afforded sovereign immunity because of the Commonwealth's significant interest in the operation of regional jails and provision of medical care to its inmates and detainees, and the level of control exercised by the Commonwealth over regional jail authorities, notwithstanding local activation and on-site management by NRJA's board.

"Sovereign immunity is a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." City of Virginia Beach v. Carmichael Dev. Co., 259 Va. 493, 499, 527 S.E.2d 778, 781 (2000) (internal quotation marks omitted). As this Court stated about sovereign immunity: "The jealous protection of the sovereign from suit is deeply rooted in the common law and has been considered a part of the plan of our Constitution since before its ratification. In arguing for the Constitution's organization of the judicial branch, Alexander Hamilton wrote that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" Research Triangle Inst. v. Board of Governors of the Fed. Reserve Sys., 132 F.3d 985, 987 (4th Cir. 1997) (footnotes omitted) (quoting The Federalist No. 81, at 511 (Alexander Hamilton) (B. F. Wright ed. 1961)).

In evaluating whether NRJA should be entitled to sovereign immunity, NRJA's

21

relationship with the Commonwealth is of paramount concern.  While regional jail authorities require local activation, they exercise their powers: "for the benefit of the inhabitants *of the Commonwealth*, for the increase of their commerce, and for the promotion of their safety, health, welfare, convenience, and prosperity." Va. Code Ann. §53.1-95.15 (emphasis added). The benefits derived from regional jail authorities are not limited to the citizens of their member localities but are enjoyed by the Commonwealth as a whole.  As stated above, the Commonwealth has a significant interest in the operation of jail authorities and in the provision of medical care to detainees as mandated by both federal and state law. U.S. Const. 8th Amend.; U.S. Const. 14th Amend.; Estelle v. Gamble; Va. Code §53.1-32; §53.1-126, §53.1-133.01, 6 Va. Admin. Code §15-40-380, 6 Va. Adm. Code §15-40-440.  The Commonwealth's significant interest in the operation of its jails as well as the more specific function of providing medical care to detainees could not be more clearly stated.

Moreover, while regional jail authorities are governed by their board, the Commonwealth nevertheless exercises a significant level of control over the operation of regional jail authorities.  The level of control by the Commonwealth over the operation of regional jails is indicative of and as a result of the significant interest the Commonwealth has in the operation of its local jails and provision of medical care to

22

its detainees.

The State Board of Corrections sets the minimum standards for the construction, equipment, administration and operation of the jails. Va. Code Ann. §53.1-68.A. More specifically, the standard operating procedures of the jail authorities must be consistent with the standards set by the State Board of Corrections. Va. Code Ann. §53.1-95.20; Va. Code Ann. §53.1-68; and 6 VAC 15-40-10 *et seq*. The superintendent of the jail must make monthly reports to the Director of the State Department of Corrections regarding the prisoners housed in the jail. Va. Code Ann. §53.1-95.19. If the superintendent fails to meet this requirement, the Director of the State Department of Corrections has the authority to make such report himself from the jail records. Va. Code Ann. §53.1-95.19.

The Department of Criminal Justice Services sets the minimum training standards for jail employees. Va. Code Ann. §53.1-68; see also, 6 Va. Adm. Code §20-50-10 through §20-50-110. Additionally, the jail authority is eligible for state reimbursement for jail operations and the positions of the correctional officers are funded by the State Compensation Board. Va. Code Ann. §53.1-95.19. Local jails are subject to audits by the State Board of Corrections every three years. 6 Va. Adm. Code §15-20-30.

With respect to the provision of medical care, minimum standards for the

23

provision of medical services are set by the State Board of Corrections. 6 Va. Adm. Code §15-40-320 through §15-40-530.   Jails are subject to annual inspections regarding the provision of medical care.  6 Va. Adm. Code §15-20-140.  The Board of Corrections may limit or prohibit the confinement of prisoners in a jail, essentially shutting the facility down, if it does not meet the minimum standards.  Va. Code Ann. §53.1-69.

Notwithstanding NRJA's local activation and onsite management by its board, the Commonwealth's significant interest in the operation of regional jails and in the provision of medical care to its inmates and detainees, and the Commonwealth's level of control over regional jail authorities, entitles NRJA to sovereign immunity. To hold otherwise, is to open the floodgates to prisoner filings alleging even simple negligence against the entity and its employees.  Such a result directly impacts the public purse as the costs of defense and any verdicts are paid from the Department of Treasury in accordance with and subject to the limitations set in the provisions of Va. Code Ann. § 2.2-1839.  The flood of simple negligence claims would also cause the employees of regional jail authorities to be afraid to act or even unwilling to take a job at a regional jail due to the risk of civil liability. For these public policy reasons that underlie the very heart and purpose of sovereign immunity, NRJA should be afforded sovereign immunity and the District Court's order reversed.

24

## CONCLUSION

NRJA requests that this Court reverse the decision of the District Court denying NRJA sovereign immunity and its motion to dismiss, and award NRJA such other and further relief as this Court deems appropriate.

## REQUEST FOR ORAL ARGUMENT

The issues presented involve a complex analysis of sovereign immunity under Virginia law where there appears to be no controlling precedent on point.   For that reason, oral argument is requested.


Respectfully Submitted,

*/s/ Rosalie P. Fessier*
Timberlake, Smith, Thomas & Moses, P.C.
25 North Central Avenue
Staunton, Virginia 24402
T: (540) 885-1517
T: (540) 885-1517
rfessier@tstm.com

*Counsel for Northwestern Regional*
*Jail Authority*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-7695          **Caption:** Suzanne Boren v. Northwestern Regional Jail Authority

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains _____5,756_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]   this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word 2010 _____ [*identify word processing program*] in
   Times New Roman, 14pt _____ [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Rosalie P. Fessier _____

Attorney for Northwestern Regional Jail _____

Dated: 3/14/2014 _____

# CERTIFICATE OF SERVICE

I certify that on  March 14, 2014     the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Elliott Matthew Buckner
CANTOR STONEBURNER FORD GRANA
& BUCKNER
Suite 400
7130 Glen Forest Drive
Richmond, VA 23226
T: 804-644-1400
ebuckner@virginiatrialfirm.com

Mark Dennis Dix
BUCCI & DIX
11449 Robious Road
Richmond, VA 23235
T: 804-888-9500
mdix@buccidix.com

/s/ Rosalie P. Fessier
_____
Signature

3/14/2014
_____
Date