RECORD NUMBER: 13-7695

# United States Court of Appeals

### *for the*

# Fourth Circuit

**SUSAN BOREN, Guardian of the Person and Conservator of the Estate of Rockie Harold Watts,**

*Appellee,*

– v. –

**NORTHWESTERN REGIONAL JAIL AUTHORITY,**

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT HARRISONBURG

## BRIEF OF APPELLEE

**ELLIOTT M. BUCKNER**
CANTOR STONEBURNER FORD
GRANA BUCKNER
**7130 Glen Forest Drive, Suite 400**
**Richmond, Virginia 23226**
**T: (804) 644-1400**
**F: (804) 644-9205**
**ebuckner@virginiatrialfirm.com**

**MARK D. DIX**
BUCCI & DIX, PLLC
**11449 Robious Road**
**North Chesterfield, Virginia 23235**
**T: (804) 888-9500**
**F: (804) 888-9507**
**mdix@buccidix.com**

*Counsel for Appellee*



UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-7695__     Caption: __Suzanne Boren v. Northwestern Regional Jail Authority, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Suzanne Boren, Guardian of the Person and Conservator of the Estate of Rockie Harold Watts__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                   ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Mark Dennis Dix                                    Date:    October 21, 2013

Counsel for:  Suzanne Boren

# CERTIFICATE OF SERVICE
**************************

I certify that on    October 21, 2013    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Mark Dennis Dix                                    October 21, 2013
          (signature)                                                    (date)

# TABLE OF CONTENTS

Corporate Disclosure Statement

Table of Authorities ................................................................ iii

Statement of the Issues Presented for Review ........................ 1

Statement of the Case ............................................................ 1

    I.  Statement of the Case ...................................................... 1

    II. Statement of the Facts ..................................................... 3

Summary of the Argument ..................................................... 5

Argument ................................................................................ 7

    I.  Standard of Review .......................................................... 7

    II.   The NRJA Is Not Entitled To Sovereign Immunity As An
          "Arm" Or "Agency" Of The Commonwealth, Or As A
          Virginia Municipal Corporation ................................... 8

    III.  The NRJA Should Not Be Treated As A Virginia Municipal
           Corporation ................................................................ 10

        A.   The NRJA Should Not Be Treated As A Municipal
             Corporation Because It Lacks Two Essential Attributes Of
             A Virginia Municipal Corporation ..................................... 10

        B.   The Particular Purpose For Which The NRJA Seeks To Be
             Treated As A Municipal Corporation Compels The Very
             Conclusion That It *Not* Be So Treated .............................. 21

    IV.  The NRJA Is Not Entitled To Sovereign Immunity Merely
          Because It *Should* Be Entitled To Sovereign Immunity ......................... 24

V.    The General Assembly Indicated Its Intent Upon Enactment That Regional Jail Authorities Not Be Afforded Sovereign Immunity, And Further Legislative Inaction Reflects Its Acquiescence ........................................................................ 25

Conclusion ............................................................................. 29

Request for Oral Argument ................................................... 30

Certificate of Compliance ...................................................... 31

Certificate of Service ............................................................. 32

# TABLE OF AUTHORITIES

**Cases**

Barson v. Commonwealth,
284 Va. 67, 726 S.E.2d 292 (2012) ............................................................. 28

Brown v. Commonwealth,
284 Va. 538, 733 S.E.2d 638 (2012) ........................................................... 15

C.J.S. and C.S. v. Bd. of Dir. of City Trusts,
No.11-1471, 2011 U.S. Dist. LEXIS 92281 (E.D. Pa. Aug. 17, 2011).......... 7

City of Richmond v. Richmond Metro. Auth.,
210 Va. 645, 172 S.E.2d 831 (Va. 1970) ("Richmond Metro.")........... *passim*

County of York v. Peninsula Airport Comm.,
235 Va. 477, 369 S.E.2d 665 (1988) ("York")....................................... 12, 20

Grady v. Spartanburg Sch. Dist. Seven,
No. 7:13CV2020, 2013 U.S. Dist. LEXIS 186278
(D. S.C. Nov. 25, 2013) ................................................................................. 7

Gray-Hopkins v. Prince George's County,
309 F.3d 224 (4th Cir. 2002) .......................................................................... 3

Halifax Corp. v. First Union Nat'l Bank,
262 Va. 91, 546 S.E.2d 696 (2001) ............................................................. 14

Halifax Corp. v. Wachovia Bank,
268 Va. 641, 604 S.E.2d 403 (2004) ........................................................... 14

Hampton Roads Sanitation District Commission v. Smith,
193 Va. 371, 68 S.E.2d 497 (1952) .................................................... 4, 20, 26

Hauth v. S.T.O.P.,
420 F. Supp. 171 (E.D. Va. 1976) .......................................................... 19, 26

Heckenlaible v. Virginia Regional Peninsula Jail Auth.,
    No. 4:06CV25, 2006 U.S. Dist. LEXIS 79719
    (E.D. Va. Nov. 1, 2006) .......................................................................... *passim*

Holland v. Big River Minerals Corp.,
    181 F.3d 597 (4th Cir. 1999) ........................................................... 11

Jean Moreau and Associates, Inc. v. Health Center
Commission for the County of Chesterfield,
    283 Va. 128, 720 S.E.2d 105 (2012) .............................................. 21

Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity,
    266 Va. 455, 587 S.E.2d 701 (2003) .............................................. 16

Merck & Co., Inc. v. Reynolds,
    559 U.S. 633 (2010) ......................................................................... 27

Mitchum v. Albemarle Co. Svc. Auth.,
    34 Va. Cir. 208, 209-10 (Albemarle County 1994) ........................ 22

National Credit Union Administration Bd. v. Nomura Home Equity Loan, Inc.,
    727 F.3d 1246 (10th Cir. 2013) ...................................................... 27

PCS Nitrogen Inc. v. Ashley II of Charleston LLC,
    714 F.3d 161 (4th Cir. 2013) ........................................................... 11

Pitt County v. Hotels.Com, LP,
    553 F.3d 308 (4th Cir. 2009) ........................................................... 16

Powers v. County Sch. Bd.,
    148 Va. 661, 139 S.E. 262 (1927) ................................................... 26

Prendergast v. Northern Virginia Regional Park Authority,
    227 Va. 190, 313 S.E.2d 399 (1984) .............................................. 22

Research Triangle Inst. v. The Bd. Of Governors of the Fed. Reserve Sys.,
    132 F.3d 985 (4th Cir. 1997) ............................................................. 7

Richmond, Fredericksburg & Potomac R.R. v. City of Richmond,
    145 Va. 225, 133 S.E. 800 (1926) ................................................... 12

iv

Short Pump Town Ctr. v. Hahn,
     262 Va. 733, 554 S.E.2d 441 (2001) ............................................................ 12

Taylor v. City of Newport News,
     214 Va. 9, 197 S.E.2d 209 (1973) ................................................................ 9

Tazewell Co. Sch. Bd. v. Brown,
     267 Va. 150, 591 S.E.2d 671 (2004) ............................................................ 28

United States v. 198.73 Acres of Land,
     800 F.2d 434 (4th Cir. 1986) ........................................................................ 11

United States v. Halliburton Co.,
     710 F.3d 171 (4th Cir. 2013) ........................................................................ 27

Virginia Electric and Power Company v. Hampton Redevelopment & Housing
Authority,
     217 Va. 30, 225 S.E.2d 364 (1976) ("VEPCO").................................. *passim*

Whitley v. Commonwealth,
     200 Va. 482, 538 S.E.2d 296 (2000) ............................................................ 7

Wise v. Vilsack,
     496 F. App'x 283 (4th Cir. 2012) ................................................................ 11

Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,
     466 F.3d 232 (2d Cir. 2006) .......................................................................... 8

**Rules and Statutes**

42 U.S.C. § 1983 ............................................................................................ 18

Va. Code § 1-224 ...................................................................................... 6, 9

Va. Code § 5.1-153 ........................................................................................ 13

Va. Code § 10.1-1601 .................................................................................... 13

Va. Code § 15.2-4903(A)............................................................................... 13

Va. Code § 15.2-5302 ............................................................. 13

Va. Code § 15.2-5403 ............................................................. 13

Va. Code § 15.2-5604 ............................................................. 13

Va. Code § 15.2-5702 ............................................................. 13

Va. Code § 15.2-5801 ............................................................. 13

Va. Code § 15.2-5901 ............................................................. 13

Va. Code § 15.2-6200 ............................................................. 13

Va. Code § 15.2-6302 ............................................................. 13

Va. Code § 15.2-6402 ............................................................. 13

Va. Code § 15.2-6500 ............................................................. 13

Va. Code § 22.1-163 .............................................................. 13

Va. Code § 23-30.25 ............................................................. 13

Va. Code § 23-30.41(a) .......................................................... 13

Va. Code § 23-50.16:3 ........................................................... 13

Va. Code § 23-231.13 ............................................................ 13

Va. Code § 36-4 ............................................................... 9, 14

Va. Code § 36-55.27 .............................................................. 14

Va. Code § 53.1-95.2 ....................................................... *passim*

Va. Code § 53.1-95.3 ......................................................... 15, 27

Va. Code § 53.1-95.6 ............................................................. 23

Va. Code § 53.1-95.7 ................................................................ 12, 14, 17, 27

Va. Code § 53.1-95.7(2) ........................................................................ 16

Va. Code § 53.1-95.8 ............................................................................ 27

Va. Code § 53.1-95.8:1 ......................................................................... 27

Va. Code § 53.1-95.9 ...................................................................... 16, 17

Va. Code § 53.1-95.15 ..................................................................... 15, 16

Va. Code § 53.1-106 ............................................................................. 23

Va. Code § 62.1-200 ............................................................................. 14

## Constitutional Amendments

United States Constitution, Eleventh Amendment ........................................ 4, 8, 18

United States Constitution, Fourteenth Amendment ............................................. 2

Virginia Constitution, Article I, § 11 ....................................................... 2

## Other Authorities

DHP About The Agency, http://www.dhp.virginia.gov/default.htm
(last visited Apr. 17, 2014) .................................................................. 25

DPOR Regulated Professions and Occupations,
http://www.dpor.virginia.gov/ProfessionsAndOccupations/
(last visited Apr. 17, 2014) .................................................................. 25

NRADC Jail Authority, http://www.nradc.com/jailauth.html
(last visited Apr. 17, 2014) .................................................................. 23

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court correctly found that Defendant-Appellant the Northwestern Regional Jail Authority ("NRJA"), a regional jail authority created pursuant to Virginia Code § 53.1-95.2 et seq., is not entitled to state law sovereign immunity because: (1) the NRJA is not an "arm" or "agency" of the Commonwealth of Virginia, or a Virginia municipal corporation; (2) the NRJA lacks two essential attributes of a Virginia municipal corporation, to wit, it was not created as "a body corporate and politic and as a political subdivision of the Commonwealth," and it lacks the power of eminent domain; and (3) there is no authority in support of the NRJA's argument that because it possesses "state-like" characteristics, it occupies a status between that of a state agency and a municipal corporation, thus entitling it to sovereign immunity.

## STATEMENT OF THE CASE

### I.      STATEMENT OF THE CASE.

Plaintiff-Appellee Suzanne Boren, Guardian of the Person and Conservator of the Estate of Rockie Harold Watts ("Boren"), alleges that the NRJA and certain employee-defendants are liable under Virginia common law for negligence, gross negligence, and willful and wanton negligence as a result of their actions and/or inactions on May 5, 2011 in the handling of her husband, Rockie Harold Watts ("Watts"), an intoxicated pre-trial detainee, as well as in responding to a number of

medical emergencies involving Watts that occurred over a course of hours before Defendants finally summoned emergency medical services for him.   Joint Appendix ("J.A.") at 16-36.   Specifically, in Count I of her Complaint, Boren alleges that the NRJA and certain correctional officers were negligent in their handling of Watts and in responding to his medical emergencies.  J.A. at 27-29.  In Count II, Boren alleges that the NRJA and certain nurses were negligent in their response to Watts' medical emergencies.  J.A. at 30-32.  In Count IV, Boren also alleged that Defendants were liable for deprivation of Watts' state constitutional rights under Section 11 of Article I of the Virginia Constitution. [1]  J.A. at 34-36.

Defendants filed six motions to dismiss contending, *inter alia*, that the NRJA, and by extension the individually-named defendants, were entitled to state law sovereign immunity as to Counts I, II and IV.  J.A. at 4-6.  After having the issues fully briefed and argued, by Order of September 30, 2013, the U.S. District Court for the Western District of Virginia (Urbanski, J.) denied Defendants' motions as to the issue of state law sovereign immunity, and thus declined to dismiss Counts I and II on those grounds.  J.A. at 230-51.

The NRJA appealed the District Court's decision on October 17, 2013, invoking the collateral order doctrine and this Court's decision in Gray-Hopkins v.

---

[1] Count III of Boren's Complaint, against the correctional officers and nurses for violation of Watts' Fourteenth Amendment rights, remains pending in the District Court and is not relevant to the present appeal.

Prince George's County, 309 F.3d 224 (4th Cir. 2002).  J.A. at 252-54.  The District Court action has been stayed.  Dkt. No. 138.

## II.   STATEMENT OF THE FACTS.

Watts was arrested in Winchester, Virginia on May 5, 2011, for profane swearing or public intoxication and taken to the Northwestern Regional Adult Detention Center ("NRADC"), a jail facility owned and/or operated by the NRJA. J.A. at 19-21.   Boren alleges that Defendants, including guards and nurses employed by the NRJA, took custody over Watts at approximately 1:15 p.m., at which point he had a .19 BAC.  J.A. at 21.  Over the ensuing hours, as his BAC began to come down, Watts began to exhibit numerous signs of seizure activity including an unexplained blood pattern about his nose and mouth approximately the size of a baseball, three seizures witnessed by guards and nurses, and defecating all over himself and his cell.  J.A. at 21-23.  Nevertheless, emergency medical services were never summoned for Watts until 11:34 p.m.  J.A. at 23. Upon arrival at the hospital, his heart stopped as a result of severe metabolic acidosis that had built-up from the multiple seizures he had experienced in the preceding hours.  J.A. at 25. Watts's brain was deprived of adequate oxygen throughout this ordeal and as a result he has suffered, and will forever suffer, from the effects of hypoxic encephalopathy.  J.A. at 25.  He is now permanently incompetent, and was so adjudicated by the Winchester City Circuit Court.  J.A. at 17, 25, 37-42.

3

At the May 16, 2013 hearing on its Motion to Dismiss, the NRJA conceded that it was not seeking Eleventh Amendment sovereign immunity, or sovereign immunity as an "arm" or "agency" of the Commonwealth, but was instead seeking to be afforded the same state law sovereign immunity as a municipal corporation. J.A. at 161-62, 178. The NRJA also conceded both in briefing and at the hearing that it was not a political subdivision of the Commonwealth and lacked the power of eminent domain, two of six essential attributes of a municipal corporation under the Virginia Supreme Court's decisions in <u>Hampton Roads Sanitation District Commission v. Smith</u>, 193 Va. 371, 68 S.E.2d 497 (1952), and <u>City of Richmond v. Richmond Metropolitan Authority</u>, 210 Va. 645, 172 S.E.2d 831 (1970). J.A. 162-63,165-66; <u>see</u> <u>also</u> Dkt. No. 35, pp.2-3. Finally, the NRJA conceded that there were no written opinions, state or federal, finding that a regional jail authority is entitled to state law sovereign immunity. J.A. at 165, 175-76.

The District Court issued a Memorandum Opinion and Order on September 30, 2013, granting in part and denying in part the NRJA's Motion to Dismiss. J.A. at 230-50. Relevant to the instant appeal, the District Court found that the NRJA was not entitled to state law sovereign immunity, and thus declined to dismiss Counts I and II. J.A. at 234-37. The District Court first rejected the NRJA's argument that because it is an instrumentality of the Commonwealth performing an essential government function, it falls on a "sovereign immunity spectrum"

4

between a state agency and a municipal corporation, and because it possesses more "state-like" characteristics, it should be entitled to sovereign immunity. J.A. at 235. In rejecting this argument, the District Court noted that the NRJA provided no case law in support of this formulation (except to cite to three state court cases devoid of any opinion or reasoning), and the Virginia Supreme Court has never adopted such an analysis. J.A. at 235.

The District Court also found that the NRJA was not entitled to state law sovereign immunity as an arm or an agency of the Commonwealth because the NRJA did not come into existence by state initiative but instead required "local activation," a point the court noted was conceded by the NRJA and was self-evident by reference to Virginia Code § 53.1-95.2. J.A. at 235-36.

Finally, persuaded by the U.S. District Court for the Eastern District of Virginia's decision in <u>Heckenlaible v. Virginia Regional Peninsula Jail Authority</u>, No. 4:06CV25, 2006 U.S. Dist. LEXIS 79719 (E.D. Va. Nov. 1, 2006), the lower court found the NRJA should not be treated as a municipal corporation because it is not a political subdivision of the Commonwealth and lacks the power of eminent domain, points the court noted were conceded by the NRJA. J.A. at 236-37.

## <u>SUMMARY OF THE ARGUMENT</u>

A Virginia regional jail authority created pursuant to Virginia Code § 53.1-95.2 <u>et</u> <u>seq</u>. is not entitled to state law sovereign immunity in the first instance

5

because it is neither an "arm" or "agency" of the Commonwealth of Virginia, nor a municipal corporation.  See infra at 8-9.  The NRJA is not an "arm" or "agency" of the Commonwealth because under the incorporating statute it could have *only* come into existence by way of "local activation."  Id.  At the hearing on its Motion to Dismiss, the NRJA conceded this point.  See supra at 5.  The NRJA is likewise not a Virginia municipal corporation under Virginia Code § 1-224 as it is not a city or town.  See infra at 9.

In addition, a regional jail authority is not entitled to sovereign immunity because it possesses only four of the six essential attributes of a municipal corporation under Virginia law.  See infra at 10-20.  Specifically, the NRJA was not created as a "body corporate and politic and as a political subdivision of the Commonwealth," and it lacks the power of eminent domain.  Id.  The NRJA conceded that it lacked these two attributes both in its briefs and at the hearing on its Motion to Dismiss.  See supra at 4-5.  Further, consideration of the particular purpose for which the NRJA seeks to be treated as a municipal corporation, i.e., sovereign immunity, compels the very conclusion that it *not* be treated as a municipal corporation.  See infra at 21-24.

In addition, there is no authority for the NRJA's request that this Court carve out a special rule of sovereign immunity for regional jail authorities because the Commonwealth "has a significant interest in the operation of regional jails and

6

provision of medical care to its inmates and detainees, and the level of control exercised by the Commonwealth." See infra at 24-25.

Finally, if the General Assembly had intended regional jail authorities to enjoy sovereign immunity, it was well aware of what statutory language to include to effect such a result. See infra at 25-28. It did not include such language and this must be presumed intentional. Id. Moreover, the General Assembly's inaction in the seven (7) years since Heckenlaible was decided reflects its acquiescence to the Eastern District of Virginia's findings. See infra at 28-29.

Accordingly, the District Court's decision, that the NRJA does not have sovereign immunity for the claims against it in this action, should be affirmed.

## ARGUMENT

## I.    STANDARD OF REVIEW.

The appropriate standard of review is *de novo*. Research Triangle Inst. v. The Bd. Of Governors of the Fed. Reserve Sys., 132 F.3d 985 (4th Cir. 1997). Because NRJA alleges sovereign immunity, it bears the burden of showing that the immunity applies. Whitley v. Commonwealth, 200 Va. 482, 493, 538 S.E.2d 296, 301 (2000); Grady v. Spartanburg Sch. Dist. Seven, No. 7:13CV2020, 2013 U.S. Dist. LEXIS 186278, *8-9 (D. S.C. Nov. 25, 2013); C.J.S. and C.S. v. Bd. of Dir. of City Trusts, No.11-1471, 2011 U.S. Dist. LEXIS 92281, *9 (E.D. Pa. Aug. 17, 2011); cf. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232,

237 (2d Cir. 2006) (collecting cases and noting that most federal circuits are in agreement with burden of proof as to Eleventh Amendment sovereign immunity).

## II. THE NRJA IS NOT ENTITLED TO SOVEREIGN IMMUNITY AS AN "ARM" OR "AGENCY" OF THE COMMONWEALTH, OR AS A VIRGINIA MUNICIPAL CORPORATION.

The NRJA is not entitled to sovereign immunity because it is not an "arm" or "agency" of the Commonwealth, or a Virginia municipal corporation.

First, the NRJA is clearly not an "arm" or "agency" of the Commonwealth. The Virginia Supreme Court's decision in Virginia Electric and Power Company v. Hampton Redevelopment & Housing Authority, 217 Va. 30, 225 S.E.2d 364 (1976) ("VEPCO"), is dispositive. In VEPCO, infant plaintiffs brought a personal injury action alleging that VEPCO and the Housing Authority were negligent with respect to the location, installation, and maintenance of an electric "switching point box" they came into contact with. Id. 217 Va. at 31-32. The Authority filed special pleas asserting that it was "a governmental entity and a political subdivision and arm of the Commonwealth" performing "governmental functions," and therefore "immune from any action predicated on tort liability."[2] Id. The trial court sustained the pleas and dismissed the actions with prejudice as to the Authority. Id. The Virginia Supreme Court reversed finding that because the Authority did not come into existence by "state initiative," but instead required

---

[2] These arguments are strikingly similar to NRJA's. See Appellant Br. at 20-25.

8

"local activation" under Virginia Code § 36-4, it was an entity purely local in nature, not an "arm" or "agency" of the Commonwealth, and thus was not entitled to the same sovereign immunity afforded the state. Id. 217 Va. at 32-33.

Likewise, in this case, the NRJA is not an "arm" or "agency" of the Commonwealth because it owes its creation to "local activation" under the NRJA's enabling statute, Virginia Code § 53.1-95.2, which provides that "[t]he governing bodies of two or more counties, cities, or towns or a combination thereof may by concurrent ordinances or resolutions or by agreement, create a jail authority."  In this case, Winchester City and the Counties of Clarke, Fauquier, and Frederick incorporated the NRJA.  Appellant Br. at 4.  Consequently, the NRJA is not an "arm" or "agency" of the Commonwealth, and is not entitled to sovereign immunity under such basis.

Second, the NRJA is certainly not a Virginia municipal corporation, and thus cannot be afforded sovereign immunity under the same conditions as one.[3] Virginia Code § 1-224 provides as follows: "'Municipality,' 'incorporated communities,' 'municipal corporation,' and words or terms of similar import *mean cities and towns*." (emphasis added).  The NRJA being neither a city nor a town of the Commonwealth, it is not a Virginia municipal corporation.

---

[3] Virginia cities and towns are entitled to sovereign immunity for their governmental acts, but not their proprietary ones.  Taylor v. City of Newport News, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973).

Because the NRJA is not an "arm" or "agency" of the Commonwealth, or a Virginia municipal corporation, the only way the NRJA could be afforded sovereign immunity is if this Court were to find it proper to nevertheless treat it as a municipal corporation. For the following reasons, this Court should decline the NRJA's invitation to do so.

## III.  THE NRJA SHOULD NOT BE TREATED AS A VIRGINIA MUNICIPAL CORPORATION.

In order to determine whether an entity should be treated as a municipal corporation, a two factor test must be applied: first, what attributes of municipality the entity possesses; and, second, in light of this initial consideration, the particular purpose for determining whether a municipal corporation is present. VEPCO, 217 Va. at 33.

### A)  THE NRJA SHOULD NOT BE TREATED AS A MUNICIPAL CORPORATION BECAUSE IT LACKS TWO ESSENTIAL ATTRIBUTES OF A VIRGINIA MUNICIPAL CORPORATION.

For purposes of the first factor, the Virginia Supreme Court has noted that there are six attributes "*essential* to viability as a municipal corporation:"

(1)  Creation as a body corporate and politic and as a political subdivision of the Commonwealth;
(2)  Creation to serve a public purpose;
(3)  Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property;
(4)  Possession of the power of eminent domain;

10

(5)     Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state;

(6)     Management of the corporation vested in a board of directors or a commission.

City of Richmond v. Richmond Metro. Auth., 210 Va. 645, 647, 172 S.E.2d 831, 832 (Va. 1970) ("Richmond Metro.") (emphasis added).   In this case, it is undisputed that the NRJA does not possess attributes (1) and (4).[4]

---

[4]     As noted previously, supra at 4-5, in the lower court the NRJA conceded both in its briefing and in open court that it lacked these two essential attributes. The NRJA now contends that as an instrumentality it is "effectively" a "political subdivision" of the Commonwealth, and that it "essentially" has an "indirect power" of eminent domain.  The reasoning behind this equivocation is obviously to buttress either the "sovereign immunity spectrum" test that was rejected by the District Court, or its request that this Court carve out sovereign immunity for it. Regardless of whether the NRJA is now seeking to argue that it has all six attributes, or a "hard four" and a "soft two," the fact remains that the NRJA should be judicially estopped from denying that it lacks these two attributes.  See United States v. 198.73 Acres of Land, 800 F.2d 434, 436 (4th Cir. 1986) (Commonwealth estopped from changing its legal theory on appeal.).

Moreover, the NRJA has waived any argument that it possesses more than four attributes and, absent exceptional circumstances not present here, the NRJA should not be allowed to argue otherwise.  See Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999);  PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161, 176 n.4 (4th Cir. 2013); Wise v. Vilsack, 496 F. App'x 283, 286 (4th Cir. 2012) (unpublished).  Contrary to the NRJA's assertion, see Appellant Reply to Resp. to Mot. to Certify at 7, it is of no significance to the issue of waiver that the standard of review in this case is de novo; PCS Nitrogen and Wise were both de novo appeals.  Finally, the NRJA cites no authority, and Boren cannot locate any, in support of the proposition that the waiver doctrine does not apply to arguments attendant to the issue of sovereign immunity because, as a subject matter jurisdiction defense, it can be raised at any time.  See id. at 8.

First, it is undisputed that the NRJA was not created "as a body corporate and politic and as a political subdivision of the Commonwealth." Nowhere in the enabling legislation is there any indication by the General Assembly that a jail authority is to be deemed a "body corporate and politic and as a political subdivision" of the Commonwealth. See Va. Code § 53.1-95.7. This is significant as the courts have repeatedly held that municipal corporations are "political subdivisions of the State." Short Pump Town Ctr. v. Hahn, 262 Va. 733, 744, 554 S.E.2d 441, 446 (2001) (quoting Richmond, Fredericksburg & Potomac R.R. v. City of Richmond, 145 Va. 225, 238, 133 S.E. 800, 803-04 (1926)). These words are legal terms of art with a long and venerable history in Virginia statutory and common law jurisprudence, not a mere matter of "form" as the NRJA argues.[5] See Appellant Br. at 12.

The mere fact the NRJA is called an "authority" is of no moment. As noted in VEPCO, 217 Va. at 33, while Virginia has long recognized that an authority

---

[5] NRJA's reliance on County of York v. Peninsula Airport Comm., 235 Va. 477, 369 S.E.2d 665 (1988) ("York"), is misplaced. In York, the incorporating statute provided that the airport commission was to be an "independent body corporate." Id. 235 Va. at 481. Moreover, another statutory provision provided "neither the Commonwealth nor *any political subdivision thereof other than the commission* shall be liable" on any commission bonds or other obligations. Id. (emphasis in original). The Supreme Court concluded from these two provisions that the General Assembly intended the commission to occupy the status of a political subdivision. In this case, there is no language in the statute by which this Court could draw a similar conclusion. See infra. at 15-16 (addressing the NRJA's statutory construction argument related to the term "political subdivision").

12

*may* be categorized as a municipal corporation, and thus eligible for sovereign immunity protection, the essential attributes of a municipal corporation must be met. However, when the General Assembly intends for an authority to be treated as a municipal corporation, it knows how to include the necessary terms in the enabling statute.[6]  While the Virginia Code notes that a jail authority shall be

---

[6] See, e.g., Va. Code § 5.1-153 (Metropolitan Washington Airports Authority created as a "public body corporate and politic"); Va. Code § 10.1-1601 (Virginia Recreational Facilities Authority created as a "political subdivision"); Va. Code § 15.2-4903(A) (industrial development authorities created as "political subdivisions"); Va. Code § 15.2-5302 (hospital authority created as a "political subdivision"); Va. Code § 15.2-5403 (electric authority created as a "political subdivision ... and a body politic and corporate"); Va. Code § 15.2-5604 (public recreational facilities authority created as a "political subdivision"); Va. Code § 15.2-5702 (park authority created as a "body politic and corporate"); Va. Code § 15.2-5801 (Virginia Baseball Stadium Authority established as a "body corporate and politic" and as a "political subdivision"); Va. Code § 15.2-5901 (Hampton Roads Sports Facilities Authority established as a "body corporate and politic" and as a "political subdivision"); Va. Code § 15.2-6200 (Alleghany Highlands Economic Development Authority created as a "body politic and corporate, a political subdivision"); Va. Code § 15.2-6302 (Authorities for Development of Former Federal Areas created as "political subdivisions"); Va. Code § 15.2-6402 (regional industrial facilities authorities created as "political subdivisions"); Va. Code § 15.2-6500 (Tourist Train Development Authority created as a "body politic and corporate, a political subdivision"); Va. Code § 22.1-163 (Virginia Public School Authority created as a "public body corporate and an agency and instrumentality of the Commonwealth"); Va. Code § 23-30.25 (Virginia College Building Authority created as a "public body corporate and as a political subdivision and an agency and instrumentality of the Commonwealth"); Va. Code § 23-30.41(a) (Educational Facilities Authority, created as a "public body corporate and as a political subdivision and an agency and instrumentality of the Commonwealth"); Va. Code § 23-50.16:3 (Virginia Commonwealth University Health System Authority created as a "public body corporate and as a political subdivision"); Va. Code § 23-231.13 (Roanoke Higher Education Authority

13

deemed an "instrumentality exercising public and essential governmental functions," this is by no means indicative of actual legislative intent to categorize a jail authority as a political subdivision of the Commonwealth.  See Va. Code § 53.1-95.7.  Given the specificity with which the General Assembly has categorized *other* authorities as "bodies corporate and politic" and as "political subdivisions" of the Commonwealth, the lack of such language in the NRJA's enabling legislation clearly indicates the General Assembly's intent that a jail authority should not be categorized as such.  As noted by the Virginia Supreme Court:

> "[W]hen the General Assembly includes specific language in one . . . statute, but omits that language from another . . . statute, [courts] must presume that the exclusion of the language was intentional" because under these circumstances, it is evident that the General Assembly "knows how" to include such language in a statute to achieve an intended objective; thus the "omission of [such] language [in another statute] represents an unambiguous manifestation of a contrary intention."

Halifax Corp. v. Wachovia Bank, 268 Va. 641, 654, 604 S.E.2d 403, 408 (2004) (quoting Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001)); see also Brown v. Commonwealth, 284 Va. 538, 545, 733 S.E.2d

---

created as a "political subdivision"); Va. Code § 36-4 (redevelopment and housing authorities created as "political subdivisions"); Va. Code § 36-55.27 (Virginia Housing Development Authority created as a "political subdivision"); Va. Code § 62.1-200 (Virginia Resources Authority created as a "public body corporate and as a political subdivision").

14

638, 641 (2012) ("It must be presumed that the legislature acted deliberately in using different language in similar statutes, and that judgment should be respected by the courts. When the General Assembly uses two different terms, it is presumed the terms are meant two different things."). Thus, the legislature's omission of this critical statutory language must be presumed intentional.[7]

The NRJA's statutory construction argument regarding use of the term "political subdivision" within the jail authority statute, Appellant Br. at 13-14, is without merit. Virginia Code § 53.1-95.3 provides, in relevant part, "As used in this article, the following words and terms shall have the following meanings unless the context indicates another meaning or intent: … 'Political subdivision' means a county, city, or town of the Commonwealth of Virginia." The NRJA contends that, despite this definition, which is expressly applicable to the entire article, because "political subdivision" *appears* to be used in a broader sense in Virginia Code § 53.1-95.15, a statutory provision relating to the issuance of bonds, the term should be given a broader construction *throughout the entire article*. Appellant Br. at 14. This is, of course, an illogical construction (indeed, the exact opposite of what § 53.1-95.3 provides), and the NRJA does not cite any authority for such a construction. Moreover, under the familiar doctrine of *ejusdem generis*,

---

[7] In addition, as noted herein, infra at 28-29, the legislature's inaction in the seven years since Heckenlaible reflects its acquiescence to the findings in that case.

the general word "political subdivision" as used in § 53.1-95.15 should not be construed to include matters within its broadest scope, but instead only those matters of the same import as that of the specific term listed earlier in that statute, to wit, "the Commonwealth." Pitt County v. Hotels.Com, LP, 553 F.3d 308, 313 (4th Cir. 2009); Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 266 Va. 455, 470, 587 S.E.2d 701, 710 (2003).

In the absence of an express designation by the General Assembly, the NRJA cannot be considered a "body corporate and politic and a political subdivision" of the Commonwealth, and cannot be treated as a municipal corporation. Consequently, the NRJA is not entitled to sovereign immunity.

Second, the NRJA undisputedly lacks the power of eminent domain, another essential attribute of a municipal corporation. See Richmond Metro., 210 Va. at 647. This power is simply lacking in the NRJA's enabling legislation. See Va. Code §§ 53.1-95.7(2), 53.1-95.9. Although a jail authority has the power under Virginia Code §§ 53.1-95.7(2) and 53.1-95.9 to acquire interests in land, it is an entirely different matter to exercise *eminent domain* over private property, or otherwise institute condemnation proceedings for the *taking* of private land in potential violation of the United States and Virginia Constitutions. Undisputedly, there is no authority for the NRJA to do so. Because this essential attribute is

16

lacking, the NRJA should not be treated as a municipal corporation and it is not entitled to sovereign immunity.

The NRJA attempts to sidestep this eminent domain problem by arguing that it "essentially" has an "indirect power" of eminent domain because: (1) a regional jail authority has the power to acquire real property, and the Commonwealth has the power to convey real property to a regional jail authority, Va. Code § 53.1-95.9; and (2) a regional jail is authorized "to accept loans and grants of money or materials or property of any kind from the Commonwealth of Virginia or any agency or instrumentality or political subdivision thereof," Va. Code § 53.1-95.7. Appellant Br. at 15-17.  Again, given the NRJA's concessions, it should be precluded from arguing in favor of this attribute.  See supra note 4.  Regardless, ultimately an entity either has the power to take away private land, or it doesn't.  It is undisputed that this power has not been statutorily granted to the NRJA. Moreover, following the NRJA's "indirect eminent domain power" theory to its logical yet absurd conclusion, *anyone* who were to purchase or receive land from the government could argue they "essentially" have the "indirect power" of eminent domain, and thus should be clothed with sovereign immunity.  This cannot be an accurate statement of the law, and the NRJA's argument should be rejected.

In light of these two essential attributes which are undisputedly missing, the U.S. District Court for the Eastern District of Virginia's decision in Heckenlaible

17

v. Virginia Regional Peninsula Jail Auth., No. 4:06CV25, 2006 U.S. Dist. LEXIS 79719 (E.D. Va. Nov. 1, 2006), is persuasive. In Heckenlaible, the same argument made by the NRJA was raised before, and flatly rejected by, the district court. In that case, plaintiff brought suit against the Virginia Regional Peninsula Jail Authority ("VRPJA"), a jail authority also created under Virginia Code § 53.1-95.2 et seq., asserting claims for personal injuries and deprivation of her civil rights under 42 U.S.C. § 1983 after being sexually assaulted by a correctional officer. Heckenlabile, 2006 U.S. Dist. LEXIS at *2. The VRPJA moved to dismiss the complaint arguing that the doctrine of sovereign immunity barred plaintiff from bringing any negligence claims against it. Id. The district court denied the motion finding that a jail authority is not entitled to Eleventh Amendment sovereign immunity because it is not an arm of the state. Id. at *3. The VRPJA filed a motion to reconsider noting that the district court did not address the argument that state sovereign immunity bars the negligence claims. Id.

The district court, in denying the VRPJA's motion to reconsider and refusing to dismiss the negligence claims against it, noted that the VRJPA did not have the same two "essential attributes" of a municipal corporation that the NRJA is missing here, i.e., it was neither created as a "body corporate and politic and as a political subdivision of the Commonwealth," nor invested with the power of eminent domain. Id. at *9. Because the VRJPA lacked these attributes, the Court

held it improper to treat the VRJPA as a municipal corporation, and therefore concluded it was not entitled to sovereign immunity.  Id. at *10-11.

Similarly, in Hauth v. S.T.O.P., 420 F. Supp. 171 (E.D. Va. 1976), the U.S. District Court for the Eastern District of Virginia found that a community action agency incorporated by various cities and counties was not immune from plaintiffs' action for negligence, *despite any immunity vested in the agency's sovereign members*, where the agency was not a corporate and politic body created as a political subdivision of the Commonwealth, lacked the power of eminent domain, and lacked the power to borrow money by issuing tax exempt bonds.  Id. at 174.  Because it lacked these three essential attributes, the district court held the agency was not entitled to sovereign immunity.  Id.

The NRJA is unable to direct this Court to *any* written opinion, either federal or state, finding that a regional jail authority is entitled to sovereign immunity. The NRJA conceded that no such authority exists, J.A. at 165, and the District Court relied upon this dearth of authority in reaching its findings. J.A. at 167-68, 235.  The NRJA instead again points this Court to three, one-page circuit court Orders, all of which involved *pro se* inmates where the sovereign immunity issue was largely uncontested and, in at least one of the cases, the plaintiff did not even show up for oral argument.  Appellant Br. at 18.  This Court should give little, if any, weight to these orders which are wholly devoid of facts or analysis, and

19

merely contain rulings against three *pro se* inmates.    <u>See</u> Appellee Resp. to Appellant Mot. to Certify at 16 n.6.

Moreover, all of the cases cited by the NRJA and *amicus curiae* to support their assertion that Virginia law does not require that all six attributes be present in order to find that an entity should be treated as a municipal corporation are inapposite: <u>Hampton Rds.</u>, <u>VEPCO</u>, <u>Richmond Metro.</u>, and <u>York</u> were all cases wherein the court found that *all six* essential attributes *were* present.  Neither the NRJA nor *amicus curiae* have directed this Court to a single reported decision or written opinion, wherein a court, federal or state, has found that an entity with *less than six* of the essential attributes should be treated like a municipal corporation.

In this case, like the VRPJA in <u>Heckenlaible</u>, the NRJA should not be treated as a municipal corporation because it is was not created as a body corporate and politic and as a political subdivision of the Commonwealth, and because it lacks the power of eminent domain.  Consequently, the NRJA is not entitled to sovereign immunity, and the decision of the District Court should be affirmed without consideration of the particular purpose for which the NRJA seeks to be treated as a municipal corporation.

However, even assuming *arguendo* that this Court were to address this second factor, it is clear that the NRJA should not be treated as a municipal corporation.

20

**B)  THE PARTICULAR PURPOSE FOR WHICH THE NRJA SEEKS TO BE TREATED AS A MUNICIPAL CORPORATION COMPELS THE VERY CONCLUSION THAT IT *NOT* BE SO TREATED.**

The NRJA should not be treated as a municipal corporation given the very purpose for which it seeks to be treated as one, i.e., sovereign immunity.

At the outset, it is important to correct a misimpression created by the NRJA and *amicus curiae*.  The NRJA and *amicus curiae* overstate the importance of the sentence in <u>VEPCO</u> that "a municipal housing authority should be held to occupy the same status as the municipality which brings it into existence and oversees it activities."  <u>See</u> Appellant Br. at 10, 17, Amicus Br. at 19-20.  The NRJA and *amicus curiae* insinuate from this isolated sentence that whether an entity was incorporated by a county, city, and/or town, or a combination thereof, is somehow indicative of its degree of "sovereign immunity-ness."  Subsequent decisions make clear this is not Virginia law.

In <u>Jean Moreau and Associates, Inc. v. Health Center Commission for the County of Chesterfield</u>, 283 Va. 128, 720 S.E.2d 105 (2012), the Virginia Supreme Court clarified this sentence in <u>VEPCO</u> with its holding that entities created by counties do *not* automatically enjoy absolute immunity.  <u>Id</u>. 283 Va. at 142.  The Court further noted that, in <u>VEPCO</u>, it "did not intend that a municipal corporation created by a county have a different status for immunity purposes than a municipal

21

corporation created by a municipality." Id. 283 Va. at 141.  Were that the case, the Court noted, in its decision in Prendergast v. Northern Virginia Regional Park Authority, 227 Va. 190, 313 S.E.2d 399 (1984), for example, it would have focused part of its sovereign immunity analysis on whether the park authority had been created by counties or municipalities, or a combination of both (which it was).  Id. 283 Va. at 142.  The Court noted that such an analysis played absolutely no part in the Prendergast decision and, therefore, such an analysis was irrelevant. Id.  Moreover, the Court noted, to focus on whether an entity was incorporated by counties or municipalities would lead to the anomalous result of "like entities performing the same function being treated differently."  Id.; see also Mitchum v. Albemarle Co. Svc. Auth., 34 Va. Cir. 208, 209-10 (Albemarle County 1994) (Circuit Court rejected same analysis urged by the NRJA and *amicus curiae* because an entity incorporated by a county would receive automatic immunity while one incorporated by a city would not, and would be complicated even further "if applied to an authority which was created *by a city and a county jointly*.") (emphasis added).  Therefore, contrary to the NRJA and *amicus curiae*'s argument, it is irrelevant what color or stripe of governmental entities incorporated the NRJA.

Despite NRJA's argument, there is a very legitimate reason why the General Assembly elected to withhold, and continues to withhold, sovereign immunity from regional jail authorities, and which counsels against treating the NRJA as a

22

municipal corporation: Regional jail authorities are politically accountable to *no one*. They are supervised and managed by a board or authority comprised of numerous individuals drawn from across the participating jurisdictions. Va. Code §§ 53.1-95.6, 53.1-106. In the NRJA's case, it includes numerous *unelected* individuals, even a lay citizen; indeed, almost one-third of the NRJA Board (5 out of 16 members) is made up of unelected individuals accountable to no one.[8] Thus, unlike a city or county Sheriff, who is identifiable and must be elected and re-elected, a regional jail authority is not politically beholden to any one particular constituency. Consequently, if a disaffected citizen wanted to seek political redress for an incident at a regional jail, he would have no way of doing so at the polls. As discussed above, it must be assumed from the words it used (and did not use), and its acquiescence after Heckenlaible, that the General Assembly recognized this and thus allowed redress in tort to remain.

It is important to be mindful in this regard that regional jail authorities do not play the same role in society as, for example, water, trash, or housing authorities. Jails are specifically meant and designed to deprive individuals of their civil liberties, albeit within the confines of the law. This is their *raison d'être*. As a result, it is imperative that, if these authorities are to be truly politically insular,

---

[8] NRADC Jail Authority, http://www.nradc.com/jailauth.html (last visited Apr. 17, 2014).

there must be another way to hold them accountable for their actions and/or inactions, particularly given the gravity of their mission.  Such accountability exists in tort.  This is something the General Assembly must have been well aware of when it intentionally withheld this critical statutory language; language which the legislature had used dozens of times previously.

The purpose for which the NRJA seeks to be treated as a municipal corporation, i.e., sovereign immunity, compels the very conclusion that it not be treated as one.

## IV.    THE NRJA IS NOT ENTITLED TO SOVEREIGN IMMUNITY MERELY BECAUSE IT *SHOULD* BE ENTITLED TO SOVEREIGN IMMUNITY.

Boiled down to its essence, the NRJA's final argument is that even if this Court were to find that under Virginia law it should not be treated as a municipal corporation, nevertheless this Court *should* afford it sovereign immunity because: (1) the Commonwealth has a significant interest in the operation of regional jails and the provision of medical care to its inmates and detainees; and (2) regional jail authorities are regulated.  The NRJA, of course, fails to cite any authority in support of this extraordinary proposition; a proposition which, among other things, raises numerous concerns about *stare decisis*, federalism, and separation of powers.  The NRJA's final argument is wholly without merit.  There are literally hundreds of industries and professions that the Commonwealth has a significant

24

interest in, and that it regulates. For example, the Department of Professional and Occupational Regulation ("DPOR") regulates forty-four (44) different professions and occupations, ranging from architects to professional wrestlers.[9] Likewise, the Department of Health Professions ("DHP") monitors and regulates 350,000 health care practitioners across 80 different professions.[10]

All of these industries and professions are of significant interest to the Commonwealth and are regulated (some, like health care professionals, considerably more so than others). If sovereign immunity turned on these factors, the number of individuals and entities claiming its protection would be astronomical. This cannot be a valid basis for determining sovereign immunity, and the NRJA's final argument should be rejected out of hand.

## V.   THE GENERAL ASSEMBLY INDICATED ITS INTENT UPON ENACTMENT THAT REGIONAL JAIL AUTHORITIES NOT BE AFFORDED SOVEREIGN IMMUNITY, AND FURTHER LEGISLATIVE INACTION REFLECTS ITS ACQUIESCENCE.

The Virginia General Assembly, with its enactment of the regional jail authority statute in the face of long-standing judicial authority, indicated its intent that regional jail authorities not be afforded sovereign immunity. Moreover, its

---

[9]     DPOR     Regulated     Professions     and     Occupations, http://www.dpor.virginia.gov/ProfessionsAndOccupations/ (last visited Apr. 17, 2014).

[10] DHP About The Agency, http://www.dhp.virginia.gov/default.htm (last visited Apr. 17, 2014).

failure to amend the statute within the last seven (7) years to provide sovereign immunity indicates its acquiescence to the Eastern District of Virginia's Heckenlaible decision.

The General Assembly enacted the regional jail authority statute in 1990. Va. Code § 53.1-95.2 et seq. Thus, the statute was enacted: (a) a full thirty-eight (38) years after Hampton Rds.; (b) twenty (20) years after the Supreme Court's decision Richmond Metro.; and (c) fourteen (14) years after the Supreme Court's decision in VEPCO, and the Eastern District of Virginia's decision in Hauth. Therefore, when the General Assembly enacted the statute, it was well-aware of that line of authority which held that in determining whether an entity should be treated as a municipal corporation, the courts should look at, among other things, whether it was created as a body corporate and politic and as a political subdivision of the Commonwealth, and whether it possesses the power of eminent domain. Despite this long-standing authority, the General Assembly chose not to give regional jail authorities these statutory powers. In this case, as a matter of law, this Court *must* presume this omission was intentional.

As the Virginia Supreme Court has noted, "When the legislature comes to pass a new law or to amend an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal." Powers v. County Sch. Bd., 148 Va. 661, 669, 139 S.E. 262, 264 (1927). This is

26

an established canon of statutory construction.  <u>See</u>, <u>e.g.</u>, <u>Merck & Co., Inc. v.</u> <u>Reynolds</u>, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."); <u>United States v.</u> <u>Halliburton Co.</u>, 710 F.3d 171, 186 (4th Cir. 2013); <u>National Credit Union</u> <u>Administration Bd. v. Nomura Home Equity Loan, Inc.</u>, 727 F.3d 1246, 1269-70 (10th Cir. 2013).  Consequently, when the General Assembly enacted the regional jail authority statute, it was aware of relevant judicial precedent but nevertheless intentionally withheld any ability to incorporate as a body corporate and politic and as a political subdivision of the Commonwealth, and intentionally withheld the power of eminent domain.

Evidence of the General Assembly's intent extends well beyond the statute's enactment and continues to this day.  Since 1990, the General Assembly has amended the statute five times, including the addition of an entirely new section:

| | |
|---|---|
| § 53.1-95.2 Jail authority | Amended 1992 |
| § 53.1-95.3 Definitions | Amended 1992 |
| § 53.1-95.7 Powers of authority | Amended 1994 |
| § 53.1-95.8 Authority of superintendent, etc. | Amended 1994, 2002, and 2004 |
| § 53.1-95.8:1 Handling of funds, etc. | Enacted 1996 |

None of these amendments addressed the statutory shortcomings related to sovereign immunity.  If the General Assembly felt a legislative change was warranted, it is readily apparent the General Assembly knew how to effect one.

27

Moreover, the Eastern District of Virginia decided <u>Heckenlaible</u> in 2004. At no point within the seven (7) years since that decision has the General Assembly amended the regional jail authority statute to allow for sovereign immunity. The Virginia Supreme Court has noted that prolonged legislative inaction following judicial interpretation of a statute constitutes tacit approval by the legislature of such judicial interpretations. <u>See</u> <u>Barson v. Commonwealth</u>, 284 Va. 67, 74, 77, 726 S.E.2d 292, 296, 298 (2012) (Supreme Court found that General Assembly's failure to amend statutes relating to obscenity definition over the eight years following Court of Appeals' decision interpreting the statutes, constituted the legislature's tacit approval of the Court of Appeals' interpretation); <u>cf.</u> <u>Tazewell Co. Sch. Bd. v. Brown</u>, 267 Va. 150, 163-64, 591 S.E.2d 671, 677-78 (2004) (General Assembly is presumed to have knowledge of Attorney General's statutory interpretation and Board of Education's construction, and General Assembly's inaction since then constitutes legislative acquiescence).

Since the statute's enactment, the General Assembly has never included within the statute any indication that a regional jail authority may be created as a body corporate and politic and as a political subdivision of the Commonwealth, possesses eminent domain power, or is otherwise entitled to sovereign immunity. This Court should conclude that these omissions were intentional, and that the

legislature has acquiesced to the Eastern District of Virginia's <u>Heckenlaible</u> decision.  Consequently, the District Court's decision should be affirmed.

## CONCLUSION

The District Court's decision should be affirmed as there are no grounds under Virginia law by which the NRJA can be afforded sovereign immunity.  It is not an "arm" or "agency" of the Commonwealth.  It is not a Virginia municipal corporation, and should not be treated as one since it lacks two essential attributes of a municipal corporation, and because the purpose for which the NRJA seeks to be treated as a municipal corporation, sovereign immunity, compels the very conclusion that it not be treated as one.  There is also no authority for affording regional jail authorities sovereign immunity merely because they *should* have sovereign immunity.  Finally, if the General Assembly had intended for regional jail authorities to be afforded sovereign immunity, it was well-aware of what language to include in the statute; it had done so many times before.  The General Assembly's failure to include critical statutory language must be presumed intentional.  Further, under settled principles of law, the General Assembly's failure during the more than seven years since <u>Heckenlaible</u> was decided to make any amendments indicating an intention to confer sovereign immunity on regional jail authorities, demonstrates legislative acquiescence to the Eastern District of Virginia's decision in that case.

29

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 34(a), Appellee hereby requests oral argument in this matter.  In addition to being significant to the parties, the trial court's ruling is likely to have significant prospective effect for inmates at Virginia regional jails.

Respectfully submitted,

APPELLEE SUZANNE BOREN,
GUARDIAN OF THE PERSON AND
CONSERVATOR OF THE ESTATE OF
ROCKIE HAROLD WATTS

BY COUNSEL

/s/ Mark Dennis Dix, Esq.

Mark Dennis Dix (VSB: 42718)
BUCCI & DIX, PLLC
11449 Robious Road
North Chesterfield, Virginia 23235
Tel.: (804) 888-9500
Fax: (804) 888-9507
mdix@buccidix.com

Elliott M. Buckner (VSB: 45227)
CANTOR STONEBURNER FORD
GRANA BUCKNER
7130 Glen Forest Drive, Suite 400
Richmond, Virginia 23226
Tel.: (804) 644-1400
Fax: (804) 644-9205
ebuckner@virginiatrialfirm.com

30

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

this Appellee's brief contains 7,318 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a mono-spaced typeface using Microsoft
Word in 14 point Times New Roman.

/ s / Mark Dennis Dix
Mark Dennis Dix

Dated: April 17, 2014

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Rosalie Pemberton Fessier
Timberlake, Smith, Thomas & Moses
P.O. Box 108
Staunton, Virginia 24402
rfessier@tstm.com
(540) 885-1517
*Counsel for Appellant*

Jeremy D. Capps
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
jcapps@hccw.com
(804) 747-5200
*Counsel for Amicus Curiae*
*Local Government Attorneys of Virginia, Inc.*
*and Virginia Municipal League*

*/s/ Catherine B. Simpson*
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664

Filing and service were performed by direction of counsel.