RECORD NUMBER: 13-7695

# United States Court of Appeals
### *for the*
# Fourth Circuit

SUSAN BOREN, Guardian of the Person and
Conservator of the Estate of Rockie Harold Watts,

*Plaintiff-Appellee,*

– v. –

NORTHWESTERN REGIONAL JAIL AUTHORITY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT HARRISONBURG

## BRIEF OF AMICUS CURIAE
## VIRGINIA TRIAL LAWYERS ASSOCIATION
## IN SUPPORT OF APPELLEE SEEKING AFFIRMANCE

| | |
|---|---|
| MARK J. KRUDYS | E. KYLE MCNEW |
| PHELAN KRUDYS PETTY, PLC | MICHIEHAMLETT PLLC |
| Reynolds Crossing | 500 Court Square |
| 6641 West Broad Street, Suite 406 | Suite 300 |
| Richmond, Virginia 23230 | Charlottesville, Virginia 22902 |
| (804) 980-7100 | (434) 951-7200 |

*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-7695__    Caption: __Boren, etc v. NRJA, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Virginia Trial Lawyers Association__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                  ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
         If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
         If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
         If yes, identify any trustee and the members of any creditors' committee:


Signature:  /s/ Mark J. Krudys  (VSB# 30718)          Date:      4/24/2014

Counsel for:  Virginia Trial Lawyers Association


# CERTIFICATE OF SERVICE
**************************

I certify that on      April 24, 2014      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


/s/ Mark J. Krudys                                              April 24, 2014
        (signature)                                                      (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................... iii

INTRODUCTION .......................................................... 1

STATEMENT OF *AMICUS* INTEREST ..................................... 2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ................. 3

STATEMENT OF THE CASE AND MATERIAL PROCEEDINGS ......... 3

STATEMENT OF FACTS ................................................ 3

SUMMARY OF THE ARGUMENT ........................................ 3

ARGUMENT .............................................................. 6

    I.     The NRJA is Not an Arm or Agency of the State or a Municipal Corporation ............................................ 6

    II.    Comparison of the NRJA and Similar Entities to Counties and Cities is Inappropriate; Further, Operation of County and City Jails is the Province of Virginia Sheriffs, who Do Not Enjoy Absolute Immunity ........................................ 9

    III.   Attempts by the NRJA and its *Amici* to Discredit the Six-Attribute Test of Relevant Judicial Precedent, and to Suggest that Localities are Stripped of Immunity through the Creation of Regional Jails, are Not Persuasive ...................................... 13

    IV.   The "Spectrum" Analysis Offered by the NRJA and its Amici to Replace the Supreme Court Test is Flawed ............. 16

    V.    Additional Arguments Made by the NRJA's *Amici* are Unpersuasive .......................................................... 19

CONCLUSION ..................................................................... 23

REQUEST FOR ORAL ARGUMENT ...................................................... 23

CERTIFICATE OF COMPLIANCE......................................................... 25

CERTIFICATE OF FILING AND SERVICE ............................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agyeman v. Winston*,
    26 Va. Cir. 140 (Richmond 1991) ....................................................... 11

*Brown v. Mitchell*,
    308 F. Supp. 2d 682 (E.D. Va. 2004) ........................................... 10, 11

*City of Richmond v. Richmond Metropolitan Authority*,
    210 Va. 645, 172 S.E.2d 831 (1970) .................................. 8, 14, 16, 20

*Doud v. Com.*,
    282 Va. 317, 717 S.E.2d 124 (2011) ................................................. 11

*First Virginia Bank-Colonial v. Baker*,
    225 Va. 72, 301 S.E. 2d 8 (1983) ...................................................... 10

*Hampton Roads Sanitation District Commission v. Smith,*
    193 Va. 371, 68 S.E.2d 497 (1952) ................................................... 20

*Hauth v. S.E. Tidewater Opportunity Project, Inc.*,
    420 F. Supp. 171 (E.D. Va. 1976) .................................................... 4, 8

*Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*,
    No. 4:06cv25, 2006 U.S. Dist. LEXIS 79719
    (E.D. Va. Nov. 1, 2006)............................................................. 4, 8, 14

*James v. Jane*,
    221 Va. 43, 282 S. E. 2d. 864 (1980) ................................................ 10

*Jean Moreau & Assoc., Inc. v. Health Center Com'n ex rel.*
*County of Chesterfield*,
    283 Va. 128, 720 S.E.2d 105 (2012) ................................................. 18

*Messina v. Burden*,
    228 Va. 301, 321 S.E.2d 657 (1984) ............................................ 2, 17

*Newbrough v. Piedmont Regional Jail Authority*,
  822 F.Supp.2d 558 (2011) ...................................................... 14

*Sleeper v. City of Richmond*
  No. 3:12CV441-HEH, 2012 U.S. Dist. LEXIS 116019
  (E.D.Va. Aug. 16, 2012) .......................................................... 11

*Virginia Elec. & Power Co. v. Hampton Redevelopment and*
*Housing Authority*,
  217 Va. 30, 225 S.E.2d 364 (1976) ...................................... 15

*Virginia Elec. & Power Co. v. Hampton Redevelopment and*
*Housing Authority*,
  217 Va. 30, 225 S.E.2d 364 (1976) ("VEPCO") ........................*passim*

*York County v. Peninsula Airport Com'n*,
  235 Va. 477, 369 S.E.2d 665 (1988) .................................... 20

**Rules and Statutes**

F.R.A.P. 29(a) ............................................................................ 2

F.R.A.P. 29(g) ......................................................................... 23

Va. Code § 1-224 ................................................................. 4, 7

Va. Code § 2.2-1839 B ........................................................... 12

Va. Code § 15.2-1638 ............................................................. 11

Va. Code § 53.1-71 ................................................................. 11

Va. Code § 53.1-95.2 ........................................................... 6, 7

Va. Code § 53.1-116 ............................................................... 11

**Other Authorities**
WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE
ENGLISH LANGUAGE 487 (1989) ............................................ 15

**INTRODUCTION**

Sovereign immunity hurts innocent parties seeking redress for their injuries by shielding culpable actors from responsibility for their tortious conduct. Only a narrow, well-defined class of litigants is entitled to sovereign immunity under Virginia law. The Northwestern Regional Jail Authority ("NRJA") is not one of those litigants. The NRJA and its *amici curiae* seek improperly to expand the discrete doctrine of sovereign immunity.

Rather than analyzing the standard established by the Supreme Court of Virginia and employed by federal courts, the NRJA and its *amici* essentially concede that they cannot satisfy that standard. Instead, they propose to substitute their own unprecedented "sovereign immunity spectrum" analysis to replace the Virginia precedent. They then work backward, using their proffered analysis to fulfill their conclusory premise that the NRJA should enjoy immunity. This is not proper legal analysis. The insistence of the NRJA and its *amici* that the NRJA is entitled to immunity despite its failing to meet the legal standard for immunity in Virginia makes plain that they want this Court to expand the contours of immunity. The scope of sovereign immunity in Virginia, however, is a policy decision that is the exclusive province of the Virginia General Assembly. As the Supreme Court of Virginia has recognized, changes to the contours of sovereign immunity may not come as the result of "the simple expedient of… judicial fiat." *Messina v. Burden*,

1

228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). If the NRJA and its *amici* want to expand sovereign immunity, the proper forum for doing so is before the General Assembly, not before this Court.

## STATEMENT OF *AMICUS* INTEREST

The Virginia Trial Lawyers Association ("VTLA"), pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, files this *amicus curiae* brief with the consent of all parties.

The VTLA is an organization of over 2,200 Virginia attorneys dedicated to protecting and preserving individual liberties and access to justice, supporting an efficient and constitutionally sound judicial system, promoting professionalism within the trial bar, and enhancing the competence of trial lawyers.

This appeal presents issues that are important to Virginia law. The issues concern not only the rights of the parties to the case, but also the rights of litigants throughout the Commonwealth. Specifically affected are persons detained and incarcerated at Virginia regional jails – this appeal potentially impacts their right to seek and obtain redress against regional jail authorities. The trial court and an Eastern District of Virginia district court have specifically held that regional jail authorities are not entitled to immunity, decisions which are consistent with the holdings of the Supreme Court of Virginia. The VTLA files this *amicus curiae* brief to underscore relevant precedent and to address the arguments made by both

2

sides, as well as arguments advanced by the Appellant's *amici*.

The VTLA affirms that no counsel for a party authored this brief in whole or in part, and that no person other than *amicus curiae* and its members made a monetary contribution related to the brief's preparation or submission. The authors of this brief received no compensation related to its preparation or submission. Counsel for the Appellee are members of the VTLA.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The VTLA adopts Appellee's Statement of the Issues Presented for Review.

## STATEMENT OF THE CASE AND MATERIAL PROCEEDINGS

The VTLA adopts Appellee's Statement of the Case.

## STATEMENT OF FACTS

The VTLA adopts Appellee's Statement of Facts.

## SUMMARY OF ARGUMENT

Contrary to the contentions of the NRJA and its *amici*, the district court properly denied the NRJA's claim of sovereign immunity. The NRJA is not entitled to sovereign immunity because it is neither an "arm" or "agency" of the Commonwealth, nor a Virginia municipal corporation, and has not demonstrated that it should it be treated as such. The NRJA has conceded that its creation required "local activation," and such "local activation" or "creat[ion]" negates any claim that the NRJA is an "arm" or "agency" of the Commonwealth. Further, the

3

NRJA should not be treated as a municipal corporation for two reasons. First, it is neither a city nor a town, which is how the Code of Virginia explicitly defines a municipal corporation. Va. Code § 1-224.[1] Second, it does not possess all of the "essential" attributes of a municipal corporation under Virginia law. Specifically, it is not a political subdivision and lacks the power of eminent domain.

Moreover, the claim that the NRJA is a "governmental entity," Brief of *Amici Curiae* The Local Government Attorneys of Virginia, Inc. and the Virginia Municipal League in Support of Appellant and Reversal ("NRJA *Amici* Brief") at 3, is an insufficient assertion in and of itself for any finding of immunity for the simple reason that not all governmental entities are entitled to immunity. Further, the contention that the district court "misconstrued" Virginia law, *Id.*, is unsupported and incorrect. Indeed, the district court's holding mirrored the holding in *Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*, No. 4:06cv25, 2006 U.S. Dist. LEXIS 79719 (E.D. Va. Nov. 1, 2006). *See also Hauth v. S.E. Tidewater Opportunity Project, Inc.*, 420 F. Supp. 171 (E.D. Va. 1976) (holding that a

---

[1] "'Municipality,' 'incorporated communities,' 'municipal corporation,' and words or terms of similar import mean cities and towns." The General Assembly enacted this definitional statute - which the NRJA and its *amici* ignore – in 2005. This statute post-dates all of the cases upon which they rely for the proposition that an entity can be "close enough" to a municipal corporation to be treated like one. There is, therefore, a strong argument that this statute legislatively supersedes the cases upon which the NRJA and its *amici* rely, and is dispositive of this case. The General Assembly has stated that only cities and towns are to be treated as municipal corporations, and the NRJA is neither.

community action agency was not entitled to immunity as it did not possess all six of the essential attributes of a municipal corporation).

The contention that the test applied by the district court was "overly rigid," *Id.,* is again unsupported. No court has characterized the test as "overly rigid"; that term is merely a characterization coined by the NRJA's *amici*. Further, denying the NRJA immunity does not create an "anomaly", Id., with regard to liability for jail operations. As discussed below, non-regional jail operations in Virginia are the responsibilities of Virginia sheriffs, who are separate constitutional officers and do not enjoy absolute immunity.

The district court's refusal to cloak the NRJA with immunity is not "contrary to the intent of the Virginia General Assembly." *Id.* Indeed, the NRJA's *amici* provide absolutely no substantiation for their view that the Virginia General Assembly intended to extend immunity to regional jail authorities. The opposite is true. The General Assembly specifically declined to provide immunity to regional jail authorities. The NRJA's *amici* turn the express dictates of the General Assembly on their head by arguing that the lack of *legislatively granted* immunity indicates the basis for *this Court* to impose it.

Further, the district court ruling does not "effectively abrogate[]" "common law sovereign immunity for local governments." *Id.* To the contrary, the

sovereignty of "local governments" is completely unaffected by the holding of the district court.

Finally, the "balancing approach" suggested by the NRJA's *amici,* NRJA *Amici* Brief at 4, is simply not the test that the Virginia Supreme Court and relevant U.S. District Courts have applied when assessing the possible application of sovereign immunity.  In their Brief, the NRJA's *amici* promote a test that they wish were applied, rather than a test that any Virginia court has ever applied.   The VTLA respectfully asserts that this Court should not focus upon what the NRJA's *amici* simply prefer.  Two district courts have properly concluded that regional jails should not enjoy sovereign immunity, and the NRJA and its *amici* offer no compelling legal basis to suggest otherwise.

## ARGUMENT

## I.    The NRJA is Not an Arm or Agency of the State or a Municipal Corporation

The NRJA, a regional jail authority created pursuant to Va. Code §§ 53.1-95.2 *et seq.*, is not entitled to sovereign immunity because it is not an "arm" or "agency" of the Commonwealth, nor is it a municipal corporation.  The trial court noted that "[a]t oral argument, the NRJA conceded that it was not an arm or agency of the state, and, due to its 'state-like' characteristics, it was not a municipal corporation."  Memorandum Opinion  ("Memo. Op.") at n4.

6

As the trial court correctly observed, "it is clear" that the NRJA is not an arm or agency of the state, Memo. Op. at 6, as it only came into existence via "local activation." *Id.* (citing *Virginia Elec. & Power Co. v. Hampton Redevelopment and Housing Authority*, 217 Va. 30, 33, 225 S.E.2d 364, 367 (1976) ("VEPCO")).[2]  As noted above, the NRJA conceded the point at the hearing on its Motion to Dismiss.  Memo. Op. at n.4.

Further, the NRJA is not a municipal corporation.  "Municipal corporation," along with "incorporated communities" and "municipality," are terms defined by statute to concern "cities and towns." Virginia Code § 1-224.  The NRJA is obviously neither.

Also, the NRJA should not be treated as a municipal corporation because it does not possess all of the "essential" attributes of a municipal corporation under Virginia law.  Specifically, it is not a political subdivision and lacks the power of eminent domain.  *See discussion* Brief of Appellee at 9-17 ("Nowhere in the enabling legislation [creating the NRJA] is there any indication by the General Assembly that a jail authority is to be deemed a 'body corporate and politic and as a political subdivision' of the Commonwealth." *Id.* at 12;  "the NRJA undisputedly lacks the power of eminent domain, another essential attribute of a municipal

---

[2]  The  NRJA's enabling statute, Virginia Code § 53.1-95.2, provides that **"[t]he governing bodies of two or more counties, cities, or towns or a combination thereof** may by concurrent ordinances or resolutions or by agreement, **create** a jail authority." (Emphasis added.)

7

corporation." *Id.* at 16.) The NRJA conceded that it did not meet all essential attributes identified in *City of Richmond v. Richmond Metro. Auth.*, 210 Va. 645, 172 S.E.2d 831 (1970) and *VEPCO*. Brief of Appellee at n.4. The requirement that an entity possess all six attributes was underscored by the district court in *Heckenlaible;* the court observed that the six attributes are "**essential** to viability as a municipal corporation," *Heckenlaible* at *6 (emphasis added) (citing *City of Richmond v. Richmond Metro Auth.*, 210 Va. at 647, 172 S.E.2d at 832) and that an "agency could not be treated as a municipal corporation" if it "did not possess **all six** of the essential attributes of a municipal corporation." *Id.* at *9-10 (emphasis added) (citing *Hauth v. S.E. Tidewater Opportunity Project, Inc.*, 420 F. Supp. at 174). The Court in *Heckenlaible,* like the trial court in this case, rightly rejected the argument that "the 'six attributes are not required for a determination that the agency is a municipal corporation in every instance.'" *Heckenlaible* at n.4 (quoting *Hauth*, 420 F. Supp. at 173-74).

The NRJA's *amici* flip the proper order of analysis by beginning with the question of whether the operation of a jail is a "governmental" function. NRJA *Amici* Brief at 4. However, the district court correctly never reached that question because a regional jail authority is neither an arm nor agency of the state, nor a municipal corporation. Only if an entity gets past this first step does the analysis progress to a governmental versus proprietary function test. *See Heckenlaible* at

8

n.4 (observing "because it is not appropriate for the court to treat the Jail Authority as a municipal corporation, the court declines to reach the issue of whether the operation of a jail is a governmental function."). In short, whether the operation of a jail constitutes a "governmental" function is a purely academic question in this case because that question only matters if the entity operating the jail is either an arm or agency of the state or a municipal corporation. Thus, the NRJA's *amici's* primary argument – "A. The Operation of a Regional Jail is a Governmental Function …." NRJA *Amici* Brief at 4 – is of no persuasive effect.

## II. Comparison of the NRJA and Similar Entities to Counties and Cities is Inappropriate; Further, Operation of County and City Jails is the Province of Virginia Sheriffs, who Do Not Enjoy Absolute Immunity

The NRJA's *amici's* broad observation that sovereign immunity is "B. … 'Alive And Well' In Virginia," *Id.* at 5, is also a bit of a *non sequitur*. The doctrine is only "alive and well" as to those entities entitled to sovereign immunity protection; regional jail authorities are not entitled to that protection. Apart from three, one-page circuit court Orders involving *pro se* inmates, which the trial court correctly observed have no persuasive impact, the NRJA and its *Amici* have been unable to cite authority finding that a regional jail authority is entitled to sovereign immunity. *See Memo. Op*. at n2 (observing "The NRJA provided no case law in support of this formulation of the state sovereign immunity calculus, except to cite to three state court cases devoid of any opinion or reasoning. The court is

9

unconvinced of this argument, noting that the Virginia Supreme Court has not adopted such an analysis.")  It matters not that "the County of Clarke, County of Faquier and County of Frederick are entitled to sovereign immunity for claims sounding in tort."  NRJA Amici Brief at 7-8.  Those counties do not operate the Northwestern Regional Jail; instead, the NRJA does.  The Plaintiff-Appellee did not sue those counties, none of those counties are financially obligated to the Plaintiff-Appellee in this matter, and nothing about the district court's ruling has any bearing on those counties.  *See* discussion *infra,* pp. 18-19.  Sovereign immunity remains "alive and well" for those entities to which it applies.  But it was never "alive and well" for entities like the NRJA, and there is no legal justification for extending the doctrine here.

Further, the NRJA's *amici*'s comparison of the liability of regional jails to the liability of counties and cities for non-regional jail operations, NRJA *Amici* Brief at 8-9, is an improper analogy.  County and city jails in Virginia are operated by *sheriffs,* who are separate constitutional officers and who may be held liable for their torts and those of their deputies and employees.[3]  Virginia sheriffs are

---

[3]   Virginia sheriffs are not immune from liability for intentional acts or acts of gross negligence, or for certain acts of simple negligence.  *See Brown v. Mitchell*, 308 F. Supp. 2d 682, 696 (E.D. Va. 2004); *James v. Jane*, 221 Va. 43, 53, 282 S. E. 2d 864, 869 (1980).  Additionally, under the doctrine of *respondeat superior,* Virginia sheriffs are not immunized from liability for the wrongful acts of their deputies and employees.  *See First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983); *see also Agyeman v. Winston*, 26 Va. Cir. 140, 142

responsible for the day-to-day operations of Virginia jails, including maintaining records on inmates/detainees, formulating and enforcing jail rules, providing security, and keeping inmates fed and clothed. *See* Va. Code Ann. § 53.1-116 et seq.; *Brown v. Mitchell*, 308 F. Supp. 2d 682, 700 (E.D. Va. 2004). Counties (and cities) are responsible for the design, construction, and structural maintenance of their jails. Va. Code § 15.2-1638; *Cf.* Va. Code Ann. § 53.1-71; *see also Sleeper v. City of Richmond*, No. 3:12CV441-HEH, 2012 U.S. Dist. LEXIS 116019 * 23-24 (E.D.Va. Aug. 16, 2012); *Brown* at 700. Sheriffs are thus responsible for the operation of county and city jails, while the applicable county or city is responsible for the jail buildings. Most detainee and inmate claims concern the former issue. The fact that Virginia sheriffs operate Virginia county and city jails is a material consideration as Virginia sheriffs are separate constitutional officers who *may be sued under the common law of Virginia.* The citation of *Doud v. Com.*, NRJA *Amici* Brief at 9, for the view that "a sheriff is entitled to sovereign immunity in the operation of a jail in Virginia" is incorrect if it is read to suggest that sheriffs are absolutely immune for their torts. *Doud v. Com.*, 282 Va. 317, 717 S.E.2d 124 (2011). As noted above, they are not. The Virginia Supreme Court in *Doud* held

---

(Richmond 1991) (The relationship between a sheriff and his deputies is different from a simple master-servant relationship. "The law looks upon the sheriff and his officers as one person. . . . if [the deputies] transgress, he is answerable to the party injured by such transgression. .. .").

11

that the *Commonwealth* was not liable for the actions of a sheriff because the sheriff was a separate constitutional officer.[4]   The decision said nothing about immunity for a sheriff.  Numerous Virginia cases have found sheriffs to be liable for their torts and the torts of their deputies.  *See* n.3 herein.  Thus, the argument that regional jails are akin to, or spring from the actions of, counties and cities, and that regional jails should therefore be absolutely immune from lawsuit is an inapt analogy.  The operators of most jails, and some of the largest jails in Virginia, are sheriffs, who have long been subject to suit, including lawsuits brought by detainees and inmates. The state also provides a form of liability coverage for sheriffs, just as it does for regional jail authorities. *See* Va. Code § 2.2-1839 B. and the discussion *infra* regarding the Virginia Constitutional Officer Risk Management Plan.

Any quarrel that the NRJA's *amici* have with the "dichotomy" in sovereign immunity law where "the only entity not entitled to sovereign immunity for the operation of a jail facility is a regional jail authority," NRJA *Amici* Brief at 9, is an issue that the *amici* should raise with the Virginia General Assembly, and not with this Court.  Indeed, regional jail authorities themselves are creatures of statute, so it is for the legislature to determine their rights and responsibilities.  The absence of

---

[4]  "[W]e must decide whether [the provisions of the VTCA] renders the Commonwealth liable for the negligent acts or omissions of deputies and jailors employed by a county sheriff."  *Doud,* 282 Va. at 321.

any legislatively imposed immunity for regional jail authorities is a clear indication that regional jail authorities do not enjoy immunity. It is not, as the NRJA and its *amici* argue, a basis for this Court to impose immunity by judicial fiat.

**III.    Attempts by the NRJA and its *Amici* to Discredit the Six-Attribute Test of Relevant Judicial Precedent, and to Suggest that Localities are Stripped of Immunity through the Creation of Regional Jails, are Not Persuasive**

The NRJA's amici's characterization of the six-attribute test for identifying a municipal corporation as "inflexible" misses the point. The test is neither inflexible nor flexible. The issue is whether the NRJA is a municipal corporation, which is a yes or no question. There is no middle ground. The six-factor test simply seeks to identify the essential attributes of a municipal corporation. The NRJA does not meet the test, so the inquiry should stop there. This Court should reject the NRJA's *amici's* contention that the test that should be applied is the test that it believes that the NRJA can meet.

Contrary to the arguments of the NRJA's *amici*, no locality "that chose to create a regional jail authority" has been "stripped" of sovereign immunity through the six-attribute test. NRJA *Amici* Brief at 10-11. The liability of any county or city that has opted to build a regional jail is exactly the same as it ever was. Regional jail authorities created in response to the regional jail legislation are liable for their own torts. Further, the contention of the NRJA and its *amici* that claims impede operations and planning is misplaced. The Commonwealth, by

means of the Virginia Constitutional Officer Risk Management Plan, provides coverage for claims by injured parties. *See Newbrough v. Piedmont Regional Jail Authority*, 822 F.Supp.2d 558, 573 (2011). Upon information and belief, regional jail authorities and regional jail officials and employees have utilized these funds to pay meritorious claims. Moreover, contrary to the NRJA's *amici's* position, there is no apparent "disincentive for local governments to participate in regional jail facilities," NRJA *Amici* Brief at 11, as almost two dozen regional jails have been built since the implementing legislation was passed, and such facilities continue to be built, with full knowledge of the liability analysis utilized by the courts. Perhaps most importantly, that liability regime appears to have worked well.

The NRJA's *amici's* statement at pages 11-12 of its Brief that "the Supreme Court of Virginia has never held that a governmental entity must have all six attributes identified in *Heckenlaible* in order to be entitled to the status of a municipal corporation for purposes of sovereign immunity," is a carefully crafted statement that ignores the realities of the Supreme Court's decisions, to say nothing of the decisions by federal courts that have addressed the issue. NRJA *Amici* Brief at 11-12. In *City of Richmond v. Richmond Metropolitan Authority*, 210 Va. 645, 647, 172 S.E.2d 831, 832 (1970), the Supreme Court of Virginia identified the six "*Heckenlaible*" factors as "**essential to viability as a municipal corporation** in

14

that instance." (Emphasis added.)   The Supreme Court in *Richmond* twice reiterated the necessity of an entity satisfying all six characteristics in order to be entitled to the status of municipal corporation (observing "[w]ith these **essential characteristics** in mind, we will now examine the legislation creating the Authority," and "[t]hus it is plain that the Authority possesses those attributes of a municipal corporation which we had earlier deemed **essential to existence of a municipal corporation** … .") *Id.* at 647-48, 832-33. (Emphasis added). "Essential" means "absolutely necessary." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 487 (1989).

The NRJA and its *amici* also seek to diminish the import of *Richmond Metropolitan Authority* by characterizing it as a "tax" case.  NRJA *Amici* Brief at 12.  However, six years after deciding that case, the Supreme Court underscored the same six essential characteristics in *Virginia Elec. & Power Co. v. Hampton Redevelopment and Housing Authority*, 217 Va. 30, 33, 225 S.E.2d 364, 367 (1976).  In that case, the Supreme Court of Virginia evaluated whether a municipal housing authority was immune from liability for negligence in the operation of a housing project.  The Supreme Court first concluded that a municipal housing authority is an entity "purely local in nature" and not a state agency performing a function of state government.  *Id.* at 33.  The Court then observed that a municipal housing authority possesses "all" of the six attributes identified by the Supreme

15

Court in *Richmond Metropolitan Authority* for status as a municipal corporation. *Id.* The Court ultimately held that a municipal housing authority carried out proprietary functions and thus was not immune from liability for negligence. *Id.* at 36. The Supreme Court's reiteration in VEPCO of the same factors that it identified in *Richmond Metropolitan Authority* as essential to existence of a municipal corporation refutes the impression fostered by the NRJA's *amici* at pages 11-12 of their Brief.

### IV.    The "Spectrum" Analysis Offered by the NRJA and its Amici to Replace the Supreme Court Test is Flawed

Finding themselves outside the boundaries of sovereign immunity protection, the NRJA and its *amici* ask this Court to expand the immunity boundaries.[5] Specifically, they propose that this Court jettison the analysis authored by the Supreme Court of Virginia, and employed by multiple federal courts – which identifies "essential" attributes of an arm of the state – and substitute a more forgiving "spectrum" analysis. The implication of this "spectrum" analysis is unquestionably predictable – the possibly hundreds of quasi-governmental entities that, like the NRJA, lack all of the six "essential"

---

[5]   The Local Government Attorneys of Virginia, Inc. ("LGA"), which characterizes itself as "actively support[ing] both legislation and litigation," NRJA *Amici* Brief at 1, describes this matter as an opportunity for this Court "to articulate the bounds of the doctrine of sovereign immunity in its application to local governmental entities." *Id.* at 2.  It is not for this Court, or any court, to "articulate" the bounds of sovereign immunity.  Articulation of boundaries is a legislative function.  This Court's role is to enforce those boundaries.

attributes of an arm or agency of the state, would seek individualized judicial analyses of their state-like attributes. With previously identified "essential" elements of an arm or agency of the state discarded, quasi-governmental entities previously defined as not being entitled to the sovereign immunity would have an easier time forwarding arguments claiming an entitlement to sovereign immunity. The NRJA and its *amici* provide no real basis for sacking the current analysis other than to say that the current test is "rigid" and "inflexible," NRJA Amici Brief at 3, 10, which, of course, is code for "they can't meet it." The end-result orientation of the NRJA's arguments can also be seen in its argument that it is "akin" to an arm of the state. What the NRJA is saying is that it is *not* an arm of the state, but that this fundamental flaw should be overlooked by this Court under a "close enough" theory. As noted in the VTLA's introductory statements, the NRJA and its *amici* know that they cannot meet the applicable test and have simply opted to seek a new test. Contrary to the NRJA and its *amici's* arguments, the Supreme Court of Virginia has recognized that changes to the contours of sovereign immunity may not come as the result of "the simple expedient of … judicial fiat." *Messina v. Burden*, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). Any proposed expansion of immunity is a legislative matter. If the NRJA and its *amici* seek to alter the effect of judicial decisions that the Plaintiff - Appellee correctly notes are as much

17

as 30 years old, then the appropriate place for such argument is before the Virginia General Assembly, and not before this Court. *See* Brief of Appellee at 26.

The NRJA's *Amici's* citation, at pages 11 and 20 of their Brief, of *Jean Moreau & Assoc., Inc. v. Health Center Com'n ex rel. County of Chesterfield*, 283 Va. 128, 720 S.E.2d 105 (2012) in support of their "spectrum" analysis approach and contention that a regional jail authority should be entitled to immunity because it was created by certain counties which enjoy immunity is curious. The Supreme Court of Virginia held in *Moreau* that an "entity is <u>not entitled to absolute immunity</u> simply because it was created by a county ..." *Id.* at 142. (emphasis added). For further emphasis of that point, the Virginia Supreme Court stated that it "**reject[ed]**" defendant Health Center Commission's contention that, in determining tort liability, a municipal corporation occupied the same status as the municipality which brings it into existence and oversees its activities. *Id.* at 140, 142. (Emphasis added).

Further, *Moreau* is clearly distinguishable from the present case because in *Moreau,* the Virginia Supreme Court found a county health commission <u>to be a municipal corporation</u>. The analysis that justified that finding was the analysis employed by the Virginia Supreme Court in *VEPCO* – the very case, with its six-attribute analysis – that the NRJA's *amici* seek to discredit. The NRJA's *amici*'s

18

argument wanders about in one big circle back to the test employed in *VEPCO* – which it cannot meet.

## V.    Additional Arguments Made by the NRJA's *Amici* are Unpersuasive

The NRJA's *amici's* contention at footnote 6, page 11 of their Brief that "most localities do not have the option of withdrawing from a regional jail authority to avoid the liability the district court has imposed upon them," leaves a misimpression, as does the statement at page 18, "[e]xposing a regional jail authority to liability for the operation of a jail is inconsistent with the legislative intent to reduce the costs of constructing and operating detention centers." NRJA *Amici* Brief at 11 and 18.  In truth, localities are <u>not</u> footing the bill for liability for claims against regional jail authorities.  Rather, a state insurance fund is.  *See supra* at 18-19.  Indeed, it can correctly be stated that the economic consequences of tort liability of regional jail authorities was well anticipated by the Virginia General Assembly when the regional jail authority enabling statute was enacted, and by the participating counties and towns when they opted to build regional jails.  Undoubtedly, the opposite fact – that participating cities and towns bear no financial cost for any liability of an authority – was, and continues to be, a selling point for their creation.

Additionally, Appellee correctly notes that all of the cases cited by the NRJA and its *amici* to support their assertion that Virginia law does not require all

19

six attributes to be present in order to find that an entity should be treated as a municipal corporation – *Hampton Roads Sanitation District Commission v. Smith,* 193 Va. 371, 68 S.E.2d 497 (1952), *VEPCO, Richmond Metro.,* and *York County v. Peninsula Airport Com'n,* 235 Va. 477, 369 S.E.2d 665 (1988) –were all cases wherein the court *found* that *all six* essential attributes were present.  Further, it is odd that the NRJA's *amici* are dismissive of *Richmond Metro.* as a "tax" case and not an immunity case, but then go on to cite language from tax cases as persuasive on this issue.

At page 16 of their Brief, the NRJA's *amici* further provide no citation authority for their contention that "the enabling language authorizing the creation of a regional jail authority establishes that regional jail authorities like NRJA possesses enough of the attributes of a municipal corporation to be entitled to the status of municipal corporation."  NRJA *Amici* Brief at 16.

Moreover, at page 17 of their Brief, the NRJA's *amici* concede that the regional jail authorities enabling legislation does not specifically state that a regional jail is a political subdivision. NRJA *Amici* Brief at 17.  The NRJA's *amici* then try mightily to demonstrate that the NRJA has characteristics that make it akin to a municipal corporation, but that line of argument only highlights the pink elephant in the room – that the Virginia General Assembly could have opted to cloak it with sovereign immunity but chose not to.  The NRJA's *amici's* earlier

20

point that regional jail authorities are the "only" entity of their type without immunity, NRJA *Amici* Brief at 9, only further enhances the inescapable conclusion – that the General Assembly did not vest regional jail authorities with sovereign immunity because it purposefully chose not do so.  That decision was well-founded, as counties and cities have been quite willing to create such authorities, the authorities have done fine, injured parties have been able to bring suit for torts committed by regional jail authorities and their employees without directly affecting counties and cities, and, upon information and belief, injured parties have gained access to a state fund that has paid claims.

At page 18 of their Brief, the NRJA's *amici* assert, in support of their "spectrum" analysis, that "the fact that the entities authorized to create a regional jail authority are entitled to sovereign immunity themselves in operating a jail is further support for the conclusion that the General Assembly intended a regional jail authority to have the status of a municipal corporation for sovereign immunity purposes." NRJA *Amici* Brief at 18.  Nothing could be further from the truth.  The enabling statute was passed in 1990.  The General Assembly could have provided immunity to regional jail authorities, but chose not to do so – and has continually chosen not to change its stance for approximately twenty years.  No appropriate inference can be drawn that the General Assembly meant to immunize regional jail authorities, in the face of the fact that it did not actually do so.  Moreover, in the

face of decisions holding regional jail authorities liable for their tortious conduct, the General Assembly still has opted not to change the law.

Likewise, at pages 18 and 19 of their Brief, the NRJA's *amici* again miss the point. There need be no fear of "abrogat[ing]" immunity, as there is no immunity to abrogate. The NRJA's *amici* make the Appellee's point by trumpeting the view that legislative action must be "explicit[] and express[]." NRJA *Amici* Brief at 19. The NRJA's *amici* never explain the absence of any clear statement of immunity for regional jail authorities in the Virginia Code.

In sum, the NRJA's *amici*'s argument that certain entities that enjoy sovereign immunity created the NRJA, and, thus, that the NRJA should be entitled to immunity, is no argument at all. It can far more effectively be argued that the General Assembly thought that there need to be boundaries to the application of sovereign immunity and opted not to extend sovereign immunity to regional jail authorities. The "spectrum" analysis test that the NRJA and its *amici* want to implement in lieu of the test utilized by the Virginia Supreme Court and federal district courts is not reasonably grounded upon legal analysis or legislative reality.

## CONCLUSION

VTLA requests that this Court uphold the Order of the district court denying Appellant NRJA sovereign immunity and overruling the NRJA's motion to dismiss, remand this case to the district court for trial, and award Appellee Boren such other and further relief as this Court deems just.

## CONTINGENT REQUEST FOR ORAL ARGUMENT

In light of the settled case law in this matter, VTLA does not feel that it is necessary for *amicus curiae* counsel to be afforded oral argument. However, if opposing *amici curiae* are granted the right to make oral argument to the Court, the VTLA requests, pursuant to Rule 29(g), that it also be granted the right to make oral argument.

Virginia Trial Lawyers Association

By: Counsel

/s/ Mark J. Krudys_____

Mark J. Krudys (VSB# 30718)
PHELAN KRUDYS PETTY, PLC
Reynolds Crossing
6641 West Broad Street, Suite 406
Richmond, VA  23230
804.980.7100 – Phone
804.767.4601- Fax
mkrudys@pkpfirm.com

E. Kyle McNew (VSB # 73210)
MICHIEHAMLETT PLLC
500 Court Square
Suite 300
Charlottesville, VA 22902
434.951.7200- Phone
434.951.7270- Fax
kmcnew@michiehamlett.com

*Counsel for Virginia Trial Lawyers Association*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
            28.1(e)(2) or 32(a)(7)(B) because:

        [ X ]  this brief contains [5,532]  words, excluding the parts of the brief
exempted      by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [    ]  this brief uses a monospaced typeface and contains [*state the number
of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
        because:

        [ X ]   this brief has been prepared in a proportionally spaced typeface using
        [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

        [    ]    this brief has been prepared in a monospaced typeface using [*state
name  and version of word processing program*] with [*state number of characters
per*    inch and name of type style*].

Dated:    __4/24/14_____            /s/ Mark J. Krudys_____
                                                            *Counsel for Amicus Curiae*

25

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 24th day of April, 2014, I caused this Brief of

*Amicus Curiae* to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

Rosalie Fessier, Esq.
TIMBERLAKE, SMITH, THOMAS & MOSES, PC
25 North Central Avenue
P.O. Box 108
Staunton, VA 24402
(540) 885-1517

*Counsel for Appellant*


Elliott M. Buckner, Esq.
CANTOR STONEBURNER FORD GRANA & BUCKNER
7130 Glen Forest Drive, Suite 400
Richmond, VA 23226
(804) 644-1400

*Counsel for Appellee*


Mark D. Dix, Esq.
BUCCI & DIX
11449 Robious Road
Richmond, VA 23235
(804) 888-9500

*Counsel for Appellee*

26

David P. Corrigan, Esq.
Jeremy D. Capps, Esq.
HARMAN, CLAYTOR, CORRIGAN, & WELLMAN
P.O. Box 70280
Richmond, VA 23255
(804) 747-5200

*Counsel for Amicus Curiae The Local Government Attorneys of
Virginia, Inc. and  The Virginia Municipal League*


I further certify that on this 24th day of April, 2014, I caused the required

copies of the Brief of *Amicus Curiae* to be hand filed with the Clerk of the Court.

/s/  Mark J. Krudys_____

*Counsel for Amicus Curiae*